FERD. LUTHY *et al.* Appellants, *vs.* HENRY REAM *et al.* Appellees.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. CORPORATIONS—*when compensation of officer is illegal.* Compensation voted to an officer of a corporation is illegal if the resolution fixing such compensation is carried by his vote.

2. SAME—*how corporations are to be controlled in Illinois.* In Illinois a corporation is to be controlled by a majority of its stockholders acting through directors elected by them in person or by proxy, although it is legitimate for owners of a majority of the stock to combine for the purpose of controlling the corporation.

3. SAME—*stockholders cannot divest themselves of power to vote for directors.* The power to vote for directors can be exercised only by stockholders, in person or by proxy, and they cannot be deprived or deprive themselves of this power, as they cannot evade the duty imposed upon them by law of using their power as stockholders for the welfare of the corporation and the general interest of its stockholders.

4. SAME—*stockholder may withdraw from combination to control a majority of stock.* A stockholder may ordinarily withdraw from a combination to control the majority of the stock of the

corporation and from a contract not to transfer his shares to the opposition or to vote against the combination, even though it is expressly agreed that the contract shall be irrevocable,

5. SAME—*what agreement as to control of corporation is invalid.* While the pooling of stock for the purpose of electing directors and officers and controlling the management of the business of the corporation is not necessarily illegal, an agreement the purpose and effect of which are to permit the affairs of the corporation to be managed by the determination of persons other than stockholders or by a minority of its own stockholders is invalid.

6. SAME—*power to vote can only be delegated by proxy, with power of revocation.* The power to vote is inherently attached to and inseparable from the real ownership of each share of stock, and can only be delegated by proxy, with power of revocation. (*Venner v. Chicago City Railway Co.* 258 Ill. 523, explained.)

7. SAME—*proxy to vote stock is always revocable.* There is no such thing as an irrevocable proxy to vote stock not coupled with any interest in the stock itself other than the right to vote it, and a proxy, though stated to be irrevocable, may be revoked at any time.

8. SAME—*a stockholder must be free to cast his vote.* Each stockholder must be free to cast his vote, whether by himself or by proxy, for the best interest of the corporation, and each stockholder has the right to demand that every other stockholder, if he desires to do so, shall have the right to exercise at each annual meeting his own judgment as to the best interest of all the stockholders.

9. SAME—*what voting trust agreement is not binding.* A voting trust agreement by which a stockholder owning but a few shares of stock is made a trustee of a majority of the stock, with power, for ten years, to elect, alone, three of the five directors of the corporation and to formulate and determine its policy, unrestrained or uninfluenced by the other stockholders, is not binding, and any stockholder or purchaser of stock with notice of the agreement may withdraw from the agreement and compel the trustee to deliver the certificates for the stock.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

CHIPERFIELD & CHIPERFIELD, and EVANS & EVANS, for appellants.

JACK, IRWIN, JACK & MILES, for appellees.

THOMAS F. DOYLE, for the Peru Plow and Wheel Company.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ferd. Luthy, Daniel W. Voorhees, George T. Page and Thomas Cahill filed a bill in chancery in the circuit court of Peoria county against Henry Ream, Benjamin D. Brewster, William Holly, the Peru Plow and Wheel Company, (a corporation,) and other persons, stockholders in the corporation, the object of which was to procure the cancellation of a certain voting trust agreement of stockholders of the corporation as to Thomas Cahill, the setting aside of the action of the directors of the corporation fixing salaries of Henry Ream, Benjamin D. Brewster and William Holly, as president, vice-president and treasurer, respectively, of the corporation, a return of the amount of the salaries received by them, and the issue of a certificate of 70 shares of the capital stock of the corporation to Thomas Cahill. Answers were filed, and after a hearing the court rendered a decree granting the relief prayed for. Upon an appeal by some of the defendants the Appellate Court for the Second District reversed the decree except so far as it held the fixing of the salaries of the officers illegal and required the amount received by them to be refunded. Complainants have appealed from this judgment, the court having certified that the case involves questions of law of such importance that it should be passed upon by the Supreme Court.

The Peru Plow and Wheel Company is a corporation organized under the laws of Illinois, having a capital stock of $400,000, engaged in the manufacture of plows, metal wheels and farm implements. The complainants are the owners of 2027 of the 4000 shares of its stock, Thomas Cahill being the owner of 70 shares purchased in November,

1912. In September, 1912, forty-one of the stockholders, owning 2001 shares of the stock, entered into the trust agreement in controversy. After reciting. that the stockholders deemed it to their interest that all of their stock should be voted as a unit upon all questions affecting the business and management of the company and that Henry Ream had consented to hold and vote such stock on behalf of the stockholders, the agreement provided:

"That for a valuable consideration, the receipt whereof is hereby acknowledged, and in further consideration of the mutual covenants and agreements expressed in this agreement, the stockholders hereby assign, convey and transfer unto the trustee above named, the number of shares of stock of the Peru Plow and Wheel Company, a corporation of the State of Illinois, as set opposite their respective names, to be held in trust by the said trustee for the respective stockholders by whom it is severally assigned, their personal representatives and assigns, upon the following terms and conditions:

"(1) · The said trustee shall hold, control and vote said stock as if he was the owner of all of said stock.

"(2) Said trustee shall determine how said stock shall be voted upon any question, at any time and every meeting of the stockholders.

"(3) All of said stock so held by the trustees shall be voted as a unit.

"(4) At all elections of directors of the Peru Plow and Wheel Company said trustee shall nominate three directors to be voted for at such election, and said trustee shall vote all said stock held by him as a unit for each and all of the directors so nominated by him.

"(5) A vacancy in the office of trustee, as herein provided for, shall be filled in the following manner, viz.: In the event of the death, resignation or removal, for any cause whatever, of said trustee herein, the vacancy in the office of trustee shall be filled by a majority in amount of the then holders of the stock now owned by the following stockhold-

ers, [here appear the names of the signers of the agreement,] parties to this agreement, as appears set opposite their respective names subscribed hereto.

"(6) Said trustee shall prepare and issue to the stockholders, certificates showing the amount of stock held on behalf of each stockholder, respectively, and the stock so held may be divided and transferred in like manner as if it had not been assigned in trust, subject to the rights and powers of the trustee under this agreement. But no such assignment or transfer of stock shall be effective for any purpose until surrender of the certificate issued by said trustee and the issue of a new certificate to the purchaser or assignee thereof.

"(7) No fees shall be charged by such trustee herein designated for any services performed in connection with the trust hereby created.

"(8) Said trustee shall collect and receive all dividends on the stock transferred to and held by him and shall immediately pay over the same to the holders of trust certificates representing such stock as their respective interests appear. The trustee shall not demand or receive any compensation for receiving and paying over such dividends.

"(9) The rights, duties and powers hereby conferred upon said trustee shall expire and wholly cease on the first day of September, A. D. 1922, and the trustee shall at said time assign and transfer to the persons who then hold trustee's certificates evidencing their ownership of shares of stock, the amount of stock to which each holder thereof is shown by his trustee's certificate to be entitled.

"(10) Said trustee hereby accepts the trust hereby created by the above and foregoing instrument, and hereby undertakes to hold, own and vote said stock as therein provided, and to re-transfer the same on the first day of September, A. D. 1922, to the holders of trustee's certificates evidencing their right to receive the same. Said trustee further undertakes at all times to vote the said stock by himself

or by proxy, and exercise his powers as trustee in such manner as he shall deem to be for the best interests of the stockholders of the Peru Plow and Wheel Company. Said trustee further undertakes to accept additional assignments of stock from, any and all stockholders of the Peru Plow and Wheel Company, and to permit any stockholder thereof to become a subscriber to this agreement. It is expressly understood and agreed that Henry Ream, trustee herein referred to, shall not be liable, either directly or indirectly, to any person, firm or corporation for any loss or damage whatever occurring on account of the trusteeship or from any act done by the said trustee in connection with the duties and trusts herein imposed upon him."

The certificates of stock of the stockholders signing the agreement were canceled and two certificates for 2001 shares, in the aggregate, were issued to Ream as trustee. He issued to each stockholder a trustee's certificate stating that the stockholder to whom it was issued was the owner of a certain number of shares of the capital stock of the Peru Plow and Wheel Company held by him as trustee, subject and pursuant to the terms, conditions and stipulations of a certain agreement between him, as trustee, and certain stockholders of the said Peru Plow and Wheel Company joining in the said agreement of date September 4, 1912, a copy of which agreement was on file with the trustee and reference was had to it as to all the terms, conditions and requirements of the trust. The certificates were stated to be transferable only on the books of the trustee by the owner thereof in person or by attorney, upon its surrender properly indorsed, when like new certificates would be issued to the proper owner of record. On the back of each certificate was a form for its assignment.

Among the stockholders signing the agreement were Kate Cahill, John D. Cahill and Cornelius J. Cahill, who together owned 70 shares of the stock. They sold their shares to the appellant Thomas Cahill and assigned to him their

trust certificate. He presented the certificate so assigned to him to Henry Ream, who was president of the corporation, and demanded that a certificate should be issued to him by the president and secretary of the corporation for 70 shares of its capital stock, but the said Henry Ream refused to issue such certificate, and stated that said 70 shares of stock were included in the trust agreement, and that he could not and would not issue a certificate for them to Thomas Cahill for that reason. Thomas Cahill thereupon notified him that as the owner of 70 shares he withdrew the same from the said trust agreement and would no longer be bound thereby, and demanded that a certificate be issued to him free from any restraint, obligation or condition under said trust agreement, but said Henry Ream refused to issue such certificate.

The annual stockholders' meeting of the corporation was held on September 10, 1912. The trust agreement had not then been signed by all the parties to it but Ream held a proxy from them all. The board of directors, consisting of five members, (Henry Ream, Benjamin D. Brewster, William Holly, Ferdinand Luthy and D. W. Voorhees,) was unanimously re-elected. The annual meeting of the directors was held on October 22, 1912. Ream, Brewster, Holly and Voorhees were unanimously re-elected to the respective offices of president, vice-president, treasurer and secretary which they had previously held. Upon the motion of Brewster, seconded by Holly, the salaries of the president, vice-president and treasurer were fixed at $2400 a year each, payable monthly, commencing with November, 1912. Brewster, Holly and Ream voted for the motion and Luthy and Voorhees against it. The persons holding these offices had never received any salary before this time, and the services performed by the incumbents after November, 1912, were nominal, as they had been before that date. Voorhees had been employed in February, 1912, as manager of the company at a salary of $6000 a year under a written contract for five years, and the business of the company was

conducted by him and under his direction. He received no salary as secretary.

Compensation voted to an officer of a corporation is illegal if the resolution fixing such compensation is carried by his vote. (*McNulta* v. *Corn Belt Bank,* 164 Ill. 427; *Voorhees* v. *Mason,* 245 id. 256.) The salaries voted to the three officers by their own votes were therefore illegal, and the decree of the circuit court properly required the amounts which had been paid on account of such salaries to be refunded. No assignment of cross-errors has been made upon this part of the decree and the only question for determination is the validity of the trust agreement.

The effect of the agreement was to place the legal title of the majority of the stock in Henry Ream, who was given the power to vote the stock for ten years upon all questions and at every meeting of the stockholders according to his own discretion, uncontrolled by the stockholders in any way. He then owned 37 shares of stock, and thus the entire control of the corporation was conferred upon the owner of less than one per cent of the stock, with no power in the owners of the remaining ninety-nine per cent to interfere in any way. We have held that it is legitimate for the owners of a majority of the stock of a corporation to combine for the purpose of controlling the corporation. (*Faulds* v. *Yates,* 57 Ill. 416; *Venner* v. *Chicago City Railway Co.* 258 id. 523.) In this case, however, the agreement goes much farther than any case which has heretofore arisen in this court. The voting power of the stock is absolutely separated from its ownership for a term of years, so that the real owners of the property are during that time entirely divested of its management and control or of any participation therein. Our law contemplates that corporations shall be controlled by a majority of the stockholders acting through directors elected by them in person or by proxy, and it has been held that a by-law of a corporation which authorizes bondholders to vote for directors at stockholders' meetings is in violation

of both the constitutional and statutory provisions requiring
directors to be elected by a majority of the shares of stock
of the corporation. (*Durkee* v. *People,* 155 Ill. 354.) The
power to vote for directors can be exercised only by stock-
holders in person or by proxy, and they cannot be deprived
or deprive themselves of this power. Stockholders cannot
evade the duty imposed upon them by law of using their
power as stockholders for the welfare of the corporation and
the general interest of its stockholders. A stockholder may
refuse to exercise his right to vote and participate in stock-
holders' meetings but he cannot deprive himself of the power
to do so. It was said in *Shepaug Voting Trust Cases,* 60
Conn. 576: "It is the policy of our law that an untram-
meled power to vote shall be incident to the ownership of
the stock, and a contract by which the real owner's power is
hampered by a provision therein that he shall vote just as
somebody else dictates is objectionable. I think it against
the policy of our law for a stockholder to contract that his
stock shall be voted just as someone who has no beneficial
interest or title in or to the stock directs, saving to himself
simply the title, the right to dividends, and perhaps the right
to cast the vote directed, willing or unwilling, whether it
be for his interest, for the interest of other stockholders or
for the interest of the corporation, or otherwise. This I
conceive to be against the policy of the law, whether the
power so to vote be for five years or for all time. It is the
policy of our law that ownership of stock shall control the
property and the management of the corporation; and this
cannot be accomplished, and this good policy is defeated, if
stockholders are permitted to surrender all their discretion
and will in the important matter of voting, and suffer them-
selves to be mere passive instruments in the hands of some
agent who has no interest in the stock, equitable or legal,
and no interest in the general prosperity of the corporation.
And this is not entirely for the protection of the stockholder
himself, but to compel a compliance with the duty which

each stockholder owes his fellow-stockholders to so use such power and means as the law and his ownership of stock give him that the general interest of stockholders shall be protected and the general welfare of the corporation sustained and its business conducted by its agents, managers and officers, so far as may be, upon prudent and honest business principles and with just as little temptation to and opportunity for fraud and the seeking of individual gains at the sacrifice of the general welfare as is possible. This, I take it, is the duty that one stockholder in a corporation owes to his fellow-stockholders, and he cannot be allowed to disburden himself of it in this way. He may shirk it, perhaps, by refusing to attend stockholders' meetings or by declining to vote when called upon, but the law will not allow him to strip himself of the power to perform his duty. To this extent, at least, a stockholder stands in fiduciary relation to his fellow-stockholders."

"The theory upon which the capital of numerous persons is associated in various proportions, in the shape of a trading corporation, to be managed by a committee of the stockholders, is that such committee shall truly represent and be subject to the will of the majority in the interest of the stockholders. The security of the small stockholders is found in the natural disposition of each stockholder to promote the best interests of all, in order to promote his individual interests. A member of an ordinary partnership has an additional security in the personal character of each of his partners and may decline to be associated with any whom he does not know and approve. But a stockholder in a corporation cannot control the personnel of his associates and must rely upon their self-interest, alone. Upon the foundation of the natural disposition of persons to promote their own interests rests the rule established in this State in the famous case of *Taylor* v. *Griswold,* 14 N. J. Law, 222, that a trading corporation could not, without special legislative authority, make a by-law authorizing a stockholder to vote

by proxy. The principle established by that case is, 'that the obligation and duty of corporators to attend in person and execute the trust or franchise reposed in or granted to them is implied in and forms a part of the fundamental constitution of every charter in which the contrary is not expressed;' and the reason given by Chief Justice Hornblower at page 227, and again by Justice Ford at page 250, is, that the good of the stockholders as well as of the public requires that each stockholder should exercise his individual judgment as to all matters presented." *Cone* v. *Russell,* 48 N. J. Eq. 208.

A stockholder may ordinarily withdraw from a combination to control the majority of the stock of a corporation and a contract not to transfer his shares to the opposition or vote against the combination, although it is expressly agreed that the contract shall be irrevocable. ( 1 Beach on Corporations, sec. 305.) In section 306 of the same work it is said : "On general principles, the right to vote on stock cannot be separated from the ownership in such sense that the elective franchise shall be in one man and the entire beneficial interest in another, nor to any extent unless the circumstances take the case out of the general rule. It matters not that the end is beneficial and the motive good, because it is not always possible to ascertain objects and motives, and if such a severance were permissible it might be abused."

While the pooling of stock for the purpose of electing directors and officers and controlling the management and business of the corporation is not necessarily illegal, an agreement the purpose and effect of which are to permit the affairs of the corporation to be managed by the determination of persons other than its stockholders or by a minority of its own stockholders is invalid. (*Shepaug Voting Trust Cases, supra; Kreissl* v. *Distilling Co. of America,* 61 N. J. Eq. 50; *White* v. *Thomas Inflatable Tire Co.* 52 id. 178; *Warren* v. *Pim,* 66 id. 353; *Bache* v. *Central Leather Co.* 78 id. 484; *Morel* v. *Hoge,* 130 Ga. 625; *Harvey* v. *Lin-*

*ville Improvement Co.* 118 N. C. 693; *Bridgers* v. *First Nat. Bank of Tarboro,* 152 id. 293.) The principle to be deduced from these cases is that the holders of the majority of the shares of stock in a corporation may control its management, and every person who becomes an owner of stock has a right to believe that the corporation will, and to insist that it shall, be managed by the majority; that the power to vote is inherently attached to and inseparable from the real ownership of each share, and can only be delegated by proxy, with power of revocation; that each stockholder must be free to cast his vote, whether by himself or by proxy, for the best interest of the corporation, and that each stockholder has the right to demand that every other stockholder, if he desires to do so, shall have the right to exercise at each annual meeting his own judgment as to the best interest of all the stockholders, untrammeled by dictation and unfettered by the obligation of any contract.

We held in *Venner* v. *Chicago City Railway Co. supra,* that the election of directors under the provisions of the trust agreement there involved, in the manner therein provided, was really an election by the stockholders through their proxies and so was not in violation of any constitutional or statutory provisions. There is no such thing as an irrevocable proxy to vote stock not coupled with any interest in the stock itself other than the right to vote it. A proxy, though stated to be irrevocable, may be revoked at any time. (1 Cook on Corporations, sec. 610.) This contract gave to Henry Ream, alone, the power for ten years to elect three of the five directors of the corporation and to formulate and determine its policy, unrestrained and uninfluenced by all the other stockholders or any of them. The surrender of their duties by the stockholders is complete, and the majority have no power to direct the trustee, for he, alone, is to determine how the stock shall be voted, and to vote it, upon any question, at any time and every meeting of the stockholders. He no longer represents the majority of the stock,

for 70 shares have been sold to the complainant Cahill, who has the entire beneficial interest therein. Other shares may be sold, so that before the expiration of the trust the trustee, who originally represented a majority of the stock but now represents only a minority, may represent only his own 37 shares, and yet, if the trust agreement is to be enforced, have absolute management and control of the corporation.

In *Smith* v. *San Francisco and North Pacific Railroad Co.* 115 Cal. 584, it was held that an agreement by several purchasers of stock in a corporation to vote it as a unit for five years, in accordance with the decision of the majority, is binding upon the parties and irrevocable. In *Carnegie Trust Co.* v. *Security Life Ins. Co. of America,* 31 L. R. A. (N. S.) 1186, the Supreme Court of Virginia held that an agreement among stockholders to place their stock in the hands of trustees for twenty-five years, to enable the trustees to manage the corporation, constituted a valid trust. These cases are inconsistent with the views which we have expressed and the cases cited in support of them, but in our judgment the latter cases state the true rule.

Although Thomas Cahill purchased his stock with notice of the agreement, that agreement was not binding upon him or his vendors if he or they wished to withdraw from it, and upon his demand for a certificate of stock he was entitled to receive it. The other complainants have a right, also, as stockholders, to prevent the trustee from voting stock which he has no right to vote.

The Appellate Court erred in reversing the decree of the circuit court in part, and its judgment will be reversed and the decree of the circuit court will be affirmed.

*Judgment reversed.*