### AS TO THE VALIDITY OF IRREVOCABLE PROXIES.

Common Pleas Court of Franklin County.

ELLA E. CRAIG, GEORGE W. BLANCHARD AND RUTGER BLEEKER MILLER v. THE BESSIE FURNACE COMPANY.

Decided, May 7, 1917.

*Corporations—Inspectors of Election Will Not be Appointed, When—Conditions Under Which Irrevocable Proxies Must be Regarded as Valid.*

1. A court will decline to appoint inspectors of a corporate election, under the provisions of Sections 8640 *et seq.*, where there is reason to believe that by so doing contractual rights may be distributed without a proper legal adjudication.

2. While general doctrine prohibits separation of the voting power from the beneficial interest in corporate stock, still the settled rule is that separation of such power is justified and legal, where there is a property interest of the corporation to be carried out, or some beneficial interest of stockholders to be subserved, or some lawful purpose advantages to stockholders to be effectuated.

3. Where a majority interest in the stock of a corporation unite in a plan for refinancing and a change of management in the belief that the best interest of the company will be promoted thereby, the giving of irrevocable proxies to the new management who are bringing in new capital is accompanied by the creation of an equitable interest in the welfare of the corporation of such a character as to sanction a separation of the voting power from ownership of the stock.

*James M. Butler*, for plaintiff.
*W. O. Henderson*, contra.

KINKEAD, J.

This is a proceeding under Sections 8640-8645, providing for applying to the court for the appointment of inspectors to receive and count the votes at a meeting of the subscribers of the stock of the defendant company for the election of directors. The petitioners own more than the ten percent. of the stock as re-

quired by statute conferring the right to resort to this pro-
ceeding.

It is alleged that certain stockholders other than plaintiffs
entered into an agreement by which the voting power of 1,900
shares of the total present outstanding 2,250 shares of the stock
of the company was vested in the Union Trust Company, a bank-
ing corporation of Pittsburgh, Pennsylvania.

Irrevocable proxies were given by holders of 1,900 shares of
capital stock to the trust company authorizing it to represent
the holders of such stock at any regular or special meeting of
the stockholders, and to vote the same upon any question per-
taining to the management, control and operation of the prop-
erty, and for the election and re-election from year to year of
the directors.

Plaintiff stockholders, it is alleged, did not give assent or ap-
proval to the agreement.

The management of the company since such agreement has
been in certain persons, the parties to such agreement being
residents of Pennsylvania. Complaint is made that these per-
sons have refused to give information to some of the officers and
directors concerning the affairs of the company, that complete
possession of all the books are in the hands of the non-resident
officers and directors, and that such books have been taken out-
side the state.

Some of the parties to this agreement, who gave proxies, have
sold their stock. The proxies given the trust company it is
stated have been canceled and revoked, but that the trust com-
pany will claim the right to vote the stock by virtue of the
proxies, and thus continue the domination and control of the
company under the persons named.

The defendant company and George S. Davison, Allen S. Davi-
son and Albert P. Meyer, with whom this voting contract was
made and in whom it appears the management and control of
the company was to be vested and in whom it has since been
and will continue to be if the terms of the contract are to be
carried out, file answer herein making denial of charges made
by the petitioners. They also set forth with some detail the

facts and circumstances leading up to the making of the agreement, and the object and purpose thereof.

In short, it is alleged that the company was in financial straits and badly in need of funds with which to meet pressing current demands as well as additional capital to insure its success. The conditions of the contract were that the former management was to be relinquished and the same be transferred to those now in control, and that the Davison Company should continue to be the exclusive selling agent of the company during the five years covered by the contract. It was agreed that those assuming the new management of the company should arrange for advances of necessary funds as well as to secure a large loan as additional capital. The new parties were also to subscribe for $25,000 of the remaining unissued stock of the company.

The existing unsold bond issue was to be retired and a new mortgage loan for $100,000 was to be secured. A loan was made by the Union Trust Company for this amount which was guaranteed by Davison, it being apparent that such loan would not have been secured or made but for such contract and proxies. The grounds for asking appointment of inspectors is that the agreement transferring the voting power is void; or if it is not void, that the same may be revoked and the proxy be withdrawn at the pleasure of a holder of the stock.

From certain allegations in the complaint of plaintiffs it is apparent that because some of the stock owned by those who gave the five-year irrevocable proxies has been sold to others, the proxies are thereby revoked and the assignee thereof is entitled to vote; that instead of allowing the assignee of such stock to vote, the trust company will claim the right to vote.

It is apparent that the purpose of having inspectors appointed is the hope or expectation that such inspectors—being impartial between the interests—may possibly receive and count the votes cast by the assignees of the stock instead of the votes cast by the trust company under the proxies.

The claim is made that the parties to the agreement resident in Pennsylvania will continue in control of the company if the proxy agreement is carried out.

The primary question is the scope and purpose of the statutory authority under which this proceeding is brought, and the power and duty of the court, as well as that of inspectors who may be appointed pursuant to the statute.

In the first place it is important to note that this proceeding is in no sense a civil action in which controverted legal rights of parties may be presented and determined. It is not contemplated that petition, answer and reply shall be filed presenting controverted or uncontroverted facts for adjudiciation of the rights of parties. No *judgment* can be rendered, and no appeal or error can be prosecuted from any order made by court or judge. Under constitutional amendment of 1912 error can be prosecuted only from a judgment. Ohio Civil Trials (Revised Ed.), Sections 1213, 1285c, Article IV, Section 6, Constitution.

It is apparent that the hope and wish is that the holders of the stock, instead of the holder of the five-year irrevocable proxies, shall be permitted to vote. It has been intimated that if impartial inspectors of election are not appointed by the court, the rights of holders of the stock will probably be prejudiced by action of those in the majority, to whom the voting power has been assigned to the trust company.

It is difficult to perceive how legal rights may be prejudiced by any action taken at a stockholders' election. It is assumed that if the court does not appoint inspectors, that the meeting will be in the control of those having control of the proxies given pursuant to the agreement made.

In consideration of the application to appoint inspectors, the court is without power to actually determine the legality of the agreement and the proxies. It can merely express an opinion which may be neither sound nor respected, according to the views of interested parties. If the opinion should be against the validity of the contract and proxies, and inspectors were therefore appointed, the probable result might be that the contract and proxies would be disregarded and the parties for whose benefit the latter were given would lose control of the company contrary to the intent and purpose of the contract, provided the inspectors followed such opinion of the court.

It certainly was not the design of the statutes, Secs. 8640 *et seq.* to thus determine important legal questions and rights.

In deciding whether the court considers the appointment of inspectors *proper and right,* it naturally is moved by its opinion concerning the validity of the contract by the terms of which the proxies were given. However, the court might well be content with refusing the appointment if it believed that by so doing contractual rights might thus be disturbed without proper legal adjudication.

It seems especially improper and unwise for the court to take action that might result in placing it within the power of inspectors to decide the legal questions and rights.

Furthermore, while inspectors who might be appointed probably would be governed by any opinion given by the court, or by any suggestion or direction so given, such action would be *coram non judice,* hence improper.

The powers and duties of inspectors appointed by the court, or selected by the meeting of stockholders, are that they—

"Shall receive and count the votes cast at such meeting, or at any adjournment thereof, either upon an election or for the decision of any question to be decided by vote, and determine the result."

At such election the holder of the proxies as well as the holders of the stock would no doubt cast or offer to cast the votes. Inspectors appointed by the court would be called upon to decide which vote or votes shall be legally counted under the contract or according to law. Three laymen would be unable to make proper decision; and three lawyers could not intelligently decide the right to vote such stock without much consideration.

If the court should conclude that the holders of the stock, and not the holder of the proxies, were entitled to vote, and for this reason appoint inspectors, the result might be favorable to the holders of the stock. Such action would require those for whose benefit the proxies were given to commence legal proceeding for determination of the questions involved.

Legal proceedings should be instituted to obtain an adjudication without regard to any action taken by the court in this proceeding.

The expression—for whose benefit the proxies were given—it seems to the court goes to the heart of the legal question involved in the contract made between stockholders and those undertaking the management of the corporation, the refinancing thereof, and the purchase of stock.

Stockholders at elections of directors have the right to vote in person or by proxy. (Section 8636.) The policy of the law is that the voting power is an incident of ownership, and that it shall be exercised only by an owner or by one who has a beneficial ownership. The rule is that ownership and voting power shall not be separated. And it is true that an agreement between stockholders to confer the power to vote their stock for a lawful purpose is legal. But it is held that such agreement is revokable at any time notwithstanding it is in terms irrevocable. So long as the parties to any such lawful agreement, or their successors in interest are satisfied with any proper agreement, no other person can complain, and the irrevocable clause does not affect the rights of any one. This is the useful doctrine drawn from *Griffith* v. *Jewett,* 15 W. L. B., 419, by Peck, J.

It is incidentally remarked in *Railway* v. *State, ex rel,* 49 O. S., 668, 680, that an agreement whereby the stock is placed in the hands of trustees who are invested with the power of voting it as their interests may dictate, irrespective of the owners, is void as against the policy of corporation law.

So it is generally considered to be contrary to legal policy for stockholders to contract that stock may be voted just as someone having no beneficial interest or title thereto may direct, saving to the owner merely the title that stockholders are not permitted to surrender all their discretion and will in the important matter of voting and suffer themselves to be the mere passive instruments in the hands of some agent having no interest in the stock, *equitable* or *legal,* and *no interest* in the general prosperity of the corporation. This is the doctrine of *Shepang Voting Trust Case,* 60 Conn., 553, citing with approval *Griffith* v. *Jewett, supra,* and relied upon by counsel in this case.

In the decisions condemning transfers of the voting power, uncoupled with an interest, exception to the rule of an interest in the welfare of the company is generally recognized. If the

person to whom the power is transferred is actuated by an interest in the welfare of the company, the proxy is to be regarded as proper and legal.

*Luthy* v. *Ream,* 270 Ill., 170, strongly urged by counsel, has been carefully examined by the court. It appears that a voting trust by which a stockholder owning but a few shares of stock is made trustee for a majority of the stock with power, alone, to elect three of the five directors, for ten years, with power to formulate and determine the policy of the corporation unrestrained and uninfluenced by the other stockholders, is held by this Illinois decision not binding, from which any stockholder or purchaser of stock with notice of the agreement may withdraw and compel the trustee to deliver the stock.

The court, however, concedes the right of a majority of stockholders to combine for the purpose of controlling the corporation, and it recognizes the right of stockholders to pool their stock for the purpose of electing directors and officers and for controlling the management of the business of the corporation. This it holds not to be necessarily illegal. It holds that there is no such thing as an irrevocable proxy to vote stock *not coupled with any interest in the stock itself* other than the right to vote it.

This decision, based as it is on materially different conditions, as is also *Griffith* v. *Jewett,* 15 W. L. Bull., 419, and *Shepang Voting Trust,* 60 Conn., 553, relied upon by counsel, are not to be regarded as relevant to the facts of this case, except as recognition is given general doctrines having pertinent relation thereto. *Railway* v. *State,* 49 O. S., 668, is not relevant to the facts in this case.

*Boyer* v. *Nesbitt,* 227 Pa. St., 398; 136 Am. St., 890, is an instructive and controlling authority. It recognizes the general doctrine prohibiting the separation of the voting power from the beneficial interest in the corporate stock; it adheres to the settled rule that to justify such separation there must be a *property interest* of the corporation to be carried out, some beneficial interest of the stockholders to be served, or some purpose not unlawful and of an advantageous character to the stockholders to be effectuated. The Pennsylvania court found that there was a property interest to conserve, a *definite policy* of the corporation

in the interest of the stockholders to be carried out and a lawful purpose beneficial to all concerned to be effectuated. This is precisely the situation presented by the contract in the present case.

All the cases, say the court, turn upon the question whether the irrevocable trust is or is not coupled with an interest. If coupled with an interest such agreements have been generally sustained, but if not coupled with an interest they are regarded as in the nature of a revocable power.

Combining corporate stock by an agreement with an object to carry out a particular policy to promote the best interests of all the stockholders is held not necessarily illegal. *Chapman* v. *Bates,* 61 N. J. Eq., 658; 88 Am. St., 459.

This is what was done in this case. A general plan and policy was adopted to rehabilitate the corporation. The voting power of the 1,900 shares of stock was given in trust for the benefit of the owners thereof as well as for the general welfare of the corporation.

In *Smith* v. *Railway,* 115 Cal., 584; 56 Am. St., 119, it was held that a proxy may be made irrevocable for a term of years as the result of a contract between the purchasers of stock in the corporation that a majority of them shall vote it as a unit during such term; that it is not in violation of public policy or any rule of law for stockholders owning a majority of stock in a corporation to cause its affairs to be managed in such way as they think best calculated to further the ends of the corporation, and, for this purpose, to appoint one or more proxies to so vote it in such a way as will carry out their plan. Nor is it against public policy for two or more stockholders to agree upon a course of corporate action, or what officers they will elect, or they may unite in the appointment of a single proxy to effect that purpose.

The foregoing review of cases sufficiently shows the proper doctrine to be applied to the facts of the present controversy.

The controlling stockholders desired and planned a new policy, refinancing and new management, looking to better results, beneficial to the corporation and its stockholders.

It was the desire of the holders of 1,900 out of 2,250 shares of stock to secure the services of competent parties to take over the

management, operation and control of the plant and business of the corporation, and to provide for the refinancing of the company. It provided that the Davisons and Meyer, the new directors and managers, should purchase the remaining $25,000 of the authorized capital stock. These parties were to be paid for their services in refinancing and managing the company by a $50,000 increase of the capital stock of the company. An agreement was made as to who should be officers of the company.

It was provided that the management, operation and control of the corporation should be in George S. Davison, as president, Allen S. Davison, as treasurer, and Albert P. Meyer, as secretary.

In refinancing the company the loan of $100,000 was secured from the trust company which was guaranteed by Davison. The loan was made in reliance upon the agreement including the delivery of irrevocable proxies to the trust company which was part of the contract, as well as the contract for the management and control of the corporation for the period of five years.

The delivery of the proxies to the trust company was a material part of the agreement and was made for the immediate and direct benefit of the holders and owners of the 1,900 shares of stock—parties to such agreement. While the voting power is vested in the trust company, it is not only for the benefit of the Davisons and Meyer, but it is for the immediate benefit of the holders of the 1,900 shares of stock, as well as all the stock of the company; but the trust company having loaned the corporation $100,000 has a property interest in the corporation; it has a legal and equitable interest; it has an interest in the property of the corporation; it has an interest in the welfare of the corporation in that it shall be sufficiently successful in its business, so as to be able to pay off and discharge the $100,000 loan. The trust company has an interest in the stock to the extent that it may have a voice and share in the control and management to the end that its loan may be secure.

The trust company has such legal and equitable interest in the company and in the stock itself as brings it within the rule which sanctions separation of the voting power from the ownership of the stock.

Plainly, therefore, the lodgment of this voting power for the

period specified was coupled with important financial interests for the material benefit of not only the 1,900 shares of stock, but of all the stock and the bonded loan as well.

The voting power was placed in trust to accomplish purposes for the primary benefit of its owners, and to give greater guaranty and security to the trust company, which was to loan the corporation $100,000. It probably would have been unwilling to have made the loan unless the complete management was thus placed in persons known to it.

In respect to the claims that some of the parties to such proxy agreement have sold their stock, and that their proxies have been revoked.

Being of the opinion that the agreement and proxies were legal and for the benefit of the owners of the 1,900 shares of stock, the further conclusion must be reached that every assignee of any of such 1,900 shares of stock took the same with full notice of the contract and irrevocable five-year proxies.

In *Boyer* v. *Nesbitt, supra,* it was held that:

"The appellant purchased his stock with full notice of the agreement, and took it impressed with the trust. He is not a purchaser without notice, and if the agreement is valid he is bound by its terms."

The fact that an irrevocable proxy was given by the holder of the stock pursuant to an agreement was endorsed on each certificate, wherein was stated in substance the fact of such agreement and of an irrevocable proxy to the Union trustee for five years.

For the reasons stated the court does not deem it proper to appoint inspectors. Such appointment would only further complicate matters and would accomplish nothing in the way of settlement of questions. I can see no advantage in appointing inspectors for the purpose of making a record. *Quo warranto* proceedings would readily settle the questions which can not be determined in this manner.

Under all the circumstances the court does not deem it proper to appoint inspectors. The application is therefore denied.