(No. 14122.—Writ denied.)

THE PEOPLE *ex rel.* The Watseka Telephone Company, Petitioner, *vs.* LOUIS L. EMMERSON, Secretary of State, Respondent.

*Opinion filed February 22, 1922—Rehearing denied April 5, 1922.*

CORPORATIONS—*corporation cannot deprive preferred stockholders of constitutional right to vote for directors.* Under section 3 of article 11 of the constitution all stockholders must be given the right to vote for the directors or managers of the corporation, and the corporation is not allowed to deprive any of its stockholders of such right to vote by adopting a resolution amending the articles of incorporation and providing that preferred stockholders, as a condition to the issue of such stock, shall waive the right to vote as to any election or to consent to or refuse to consent to any corporate action.

ORIGINAL petition for *mandamus.*

CUTTING, MOORE & SIDLEY, for petitioner.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, and JAMES W. GULLETT, of counsel,) for respondent.

Mr. JUSTICE CARTER delivered the opinion of the court:

By leave of court an original petition for *mandamus* was filed in this court in June, 1921, praying that the Secretary of State be commanded to issue a certificate to the Watseka Telephone Company permitting it to increase its capital stock and issue preferred stock containing certain conditions. The Secretary of State demurred to the petition, and the question is before us for consideration as to whether or not the writ should issue against the Secretary of State.

The petition filed herein sets up that the petitioner was incorporated under the laws of Illinois and authorized to conduct a telephone and electrical and signal business, enumerating certain franchises, privileges and incidental rights given to conduct such business, and representing that its capital stock now consisted of 350 shares of $100 each, par value, paid in full and outstanding, and that since 1907 it has been conducting a general telephone business in Watseka, Illinois; that in 1921 the board of directors of the company desiring to increase the capital stock and issue new stock containing certain conditions, passed a resolution increasing the capital stock to $70,000, consisting of 700 shares of $100, par value; that pursuant to the resolution, and in accordance with a notice to the stockholders, the matter was submitted at the annual meeting held June 15, 1921; that at said meeting all but two stockholders were present or represented, and the resolution, substantially as theretofore adopted by the board of directors, was submitted to the stockholders and adopted by them. This resolution provided that preferred stockholders should not have the right to vote as to any election or to consent to or refuse to consent to any corporate action; that such right was waived by the owners and holders of such preferred stock as a condition and in consideration of its being issued by the company. The resolution also provided

as to other matters not here in point. A statement containing this resolution was communicated to the Secretary of State with the offer to pay a statutory fee of $60.84, but he declined to receive the same on the ground that the proposed amendment to the articles of incorporation was not in conformity with the provisions of the constitution of 1870.

The question presented in this case is whether the company has the right and power, under the constitution and laws of the State, to provide for preferred stock, the owner of which is expressly deprived of the right to vote for directors. This question depends upon the construction that should be given to section 3 of article 11 of the constitution of 1870, which reads as follows: "The General Assembly shall provide, by law, that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner."

Paragraph 28*a*22 of the general Incorporation act contains practically the same provisions as does section 3 just quoted, as to the shareholders voting for directors or managers. (Hurd's Stat. 1919, p. 730.) Paragraph 4 of section 6 of the general Incorporation act passed in 1919 provides that stock may be divided "into such classes, with such preferences, rights, values and interests as may be provided in the articles of incorporation, or any amendment thereof." (Hurd's Stat. 1919, p. 723.)

Counsel in this case seem to agree that at common law preferred stockholders, or any other class of stockholders, might be deprived of the right to vote for directors, and

that said paragraph 4 of section 6 might be construed in accordance with the common law provisions were it not for the wording of section 3 of article 11 of the constitution.

It is argued by counsel for respondent that section 3 of the constitution was intended to provide at least two things: that in all elections for directors or managers every stockholder should have the right to vote one vote for each share of stock for each office of director or manager to be filled, and that every stockholder should have the right to vote, in person or by proxy, for the number of shares of stock owned by him by cumulating such shares and giving to one candidate as many votes as the number of his shares multiplied by the number of candidates shall equal, or distribute them among the candidates; while counsel for petitioner insist that this construction contended for by counsel for the State requires the use of the word "and" in place of "or" between these two portions of said section, and that the main, if not the only, purpose of the constitutional convention in inserting said section 3 was to confer upon the stockholders the right of cumulative voting for directors or managers; that by the use of the word "or" in this section it was intended to provide for alternative methods of voting by the stockholders, and that to give the construction to "or" as contended for by the State would practically defeat the main purpose of the constitutional convention.

In Cooley's Constitutional Limitations (7th ed. p. 89) the author states: "The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. In the case of all written laws it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it, and unless examination demonstrated that the presumption does not hold good in the particular case nothing will remain except to enforce it. * * * 'Whether we are considering an agreement be-

tween parties, a statute or a constitution with a view to its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which, alone, we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning.' " Again, on page 92 of the same volume the author says: "In interpreting clauses we must presume that words have been employed in their natural and ordinary meaning. As Marshall, Ch. J., says: The framers of the constitution, and the people who adopted it, 'must be understood to have employed words in their natural sense and to have intended what they have said.' This is but saying that no forced or unnatural construction is to be put upon their language."

In *Sturges* v. *Crowninshield,* 4 Wheat. 122, the Supreme Court of the United States laid down a similar doctrine, and also said (p. 202): "Although the spirit of an instrument, especially of a constitution, is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of an instrument expressly provide shall be exempted from its operation. Where words conflict with each other,—where the different clauses of an instrument bear upon each other and would be inconsistent unless the natural and common import of words be varied,—construction becomes necessary and a departure from the obvious mean-

ing of words is justifiable; but if in any case the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case would be monstrous; that all mankind would without hesitation unite in rejecting the application."

In *Burke* v. *Snively,* 208 Ill. 328, this court was considering the construction that was put upon the Illinois constitution, and stated (p. 340) : "The constitution of a State derives its force and authority from the vote of the people adopting it.  For that reason it is a general rule that in construing the provisions of a constitution the words employed therein shall be given the meaning which they bear in ordinary use among the people.  The natural and ordinary meaning of the words is to be accepted except where a word is used the meaning whereof is established by statute or by judicial construction."

In *People* v. *Stevenson,* 281 Ill. 17, this court, in construing the Illinois constitution, on page 25 quoted with approval from the case of *City of Beardstown* v. *City of Virginia,* 76 Ill. 34, as follows: "The constitution does not derive its force from the convention which framed but from the people who ratified it, and the intent to be arrived at is that of the people."  In the *Stevenson case* the court then continued: "Constitutions, as well as statutes, should be read and understood according to the most natural and obvious import of the language used, without resort to subtle and forced construction for the purpose of limiting or extending their operation.  * * *  The intention to which force is given in construing constitutional provisions is that which is embodied and expressed in the language of the provisions.  As a constitution is dependent upon adoption by the people, the language used will be understood in the sense most obvious to the common understanding.  The lan-

3C2—20

guage and words of a constitution, unless they be technical words and phrases, will be given effect according to their usual and ordinary signification, and courts will not disregard the plain and ordinary meaning of the words used, to search for some other conjectural intention."

Counsel for petitioner in effect contend that in construing the phrase "every stockholder," used in section 3 of article 11 of the constitution, the convention, and the people who adopted it, should be held to have meant "every stockholder entitled to vote." With this we cannot agree. If the convention intended that only those stockholders who were given the right to vote by the charter or articles of incorporation adopted by the company were included it would have been perfectly easy to word this section so as to convey this meaning, but instead of so wording it the convention used the language, "every stockholder shall have the right to vote, in person or by proxy, * * * for as many persons as there are directors or managers to be elected," and followed this with a provision as to cumulating said shares. In our opinion the natural meaning of these words is that the constitution secures to each stockholder the right to vote in person or by proxy for as many persons as there are directors or managers to be elected, and also secures to him the right, if he wishes, "to cumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit."

While courts of justice will transpose a clause and use the word "and" for "or," or "or" for "and," in cases where it is absolutely necessary so to do, (6 Words and Phrases, 5006, 5007, and cases there cited; 3 id.—2d series,—762, 763;) we can say in this case as we said in *Krome* v. *Halbert,* 263 Ill. 172, that it is unreasonable to argue that the convention intended the word "and" instead of "or." In construing the terms of this section of the constitution, giv-

ing to the language its ordinary and natural meaning, as we understand it, in which it was used by the members of the convention and by the people who voted on the constitution, we can reach no other conclusion than that it should not be construed with the word "or" as intended chiefly and primarily to allow the cumulative voting of the stockholders for the number of directors· or managers of the corporation, but just as strongly as intended to provide that no stockholder should be deprived of the right to vote for. directors as therein specified.

This court has had occasion to construe this section of the constitution in two cases where the question under consideration has some bearing on the question here to be decided. In *Durkee* v. *People,* 155 Ill. 354, the court held that the attempted giving to bondholders the right to vote for directors was unconstitutional under this provision because it deprived the stockholders of the right to control and manage the corporation; and in *Luthy* v. *Ream,* 270 Ill. 170, where a majority of the stockholders pooled their stock and placed it in the hands of a trustee, with irrevocable power for a term of years to vote the stock in all elections for directors and managers, the court held that the shareholders had no power to do so, and said (p. 177) : "Our law contemplates that corporations shall be controlled by a majority of the stockholders acting through directors elected by them, in person or by proxy. * * * The power to vote for directors can be exercised only by stockholders in person or by proxy, and they cannot be deprived or deprive themselves of this power. Stockholders cannot evade the duty imposed upon them by law of using their power as stockholders for the welfare of the corporation and the general interest of its stockholders. A stockholder may refuse to exercise his right to vote and participate in stockholders' meetings, but he cannot deprive himself of the power to do so." The court also said in that opinion (p. 181) : "The principle to be deduced from these cases

is that the holders of the majority of the shares of stock in a corporation may control its management, and every person who becomes an owner of stock has a right to believe that the corporation will, and to insist that it shall, be managed by the majority; that the power to vote is inherently attached to and inseparable from the real ownership of each share and can only be delegated by proxy, with power of revocation; that each stockholder must be free to cast his vote, whether by himself or by proxy, for the best interest of the corporation, and that each stockholder has the right to demand that every other stockholder, if he desires to do so, shall have the right to exercise at each annual meeting his own judgment as to the best interest of all the stockholders, untrammeled by dictation and unfettered by the obligation of any contract."

While we agree with counsel for petitioner that these decisions do not necessarily decide the question here under consideration and therefore cannot necessarily be held controlling, we cannot agree with the argument of counsel that it is not a fair conclusion from the reasoning in those cases that because all persons having the right to vote must be stockholders therefore "all stockholders must necessarily be persons having the right to vote." We think the reasoning in these two cases, if logically followed, must inevitably lead to the conclusion that all stockholders under this provision of the constitution must have the right and authority to vote for the directors or managers of the company. Under a somewhat similar constitutional provision in *State* v. *Swanger,* 190 Mo. 561, it was held that it was the main purpose of the provision of the Missouri constitution to introduce the principle of cumulative voting in the election of directors or managers so as to secure to the minority stockholders a voice in the management of its affairs in proportion to the number of shares held by each, and that the constitution did not necessarily mean that every stockholder might vote but that those who were entitled to vote should

do so under the cumulative plan, and had no reference to the contractual right of the stockholders so to do. In view of the fact that the wording of the Missouri constitution is quite markedly different on this question from that of our own, we do not consider said case as of great weight or that it should control here. The Supreme Court of Delaware, in *Brooks* v. *State,* Ann. Cas. (1915A) 1133, had under consideration a provision of the constitution of that State quite similar in wording to that of our own constitution on this question, and held that a statute which authorized the corporation to give its stockholders a voting power different from that prescribed by the constitution was void. The authorities cited from other jurisdictions on this question we do not consider so applicable as to require our consideration or discussion.

It is argued by counsel for petitioner that as the common law permitted provisions in articles of incorporation such as they contend for here, the constitution should not be construed as providing a change in the common law in this regard unless it is manifest that section 3 of article 11 so requires. In Cooley's Constitutional Limitations (7th ed. p. 94) the author says: "It is also a very reasonable rule that a State constitution shall be understood and construed in the light and by the assistance of the common law and with the fact in view that its rules are still in force. By this we do not mean that the common law is to control the constitution or that the latter is to be warped and perverted in its meaning in order that no inroads, or as few as possible, may be made in the system of common law rules, but only that for its definitions we are to draw from that great fountain, and that in judging what it means we are to keep in mind that it is not the beginning of law for the State, but that it assumes the existence of a well understood system which is still to remain in force and be administered but under such limitations and restrictions as that instrument imposes. It is a maxim with the courts

that statutes in derogation of the common law shall be construed strictly,—a maxim which we fear is sometimes perverted to the overthrow of the legislative intent; but there can seldom be either propriety or safety in applying this maxim to constitutions. When these instruments assume to make any change in the common law the change designed is generally a radical one; but as they do not go minutely into particulars, as do statutes, it will sometimes be easy to defeat a provision if the courts are at liberty to say that they will presume against any intention to alter the common law further than is expressly declared. A reasonable construction is what such an instrument demands and should receive, and the real question is what the people meant, and not how meaningless their words can be made by the application of arbitrary rules."

We think the reasoning of this learned author on this question upholds the view that a corporation is not allowed to deprive any of its stockholders of the right to vote for its directors or managers. The public policy of the State may be established by the provisions of its constitution, (*People* v. *Chicago Gas Trust Co.* 130 Ill. 268; *Hannah* v. *People,* 198 id. 77;) and the public policy may also be shown by the legislative enactment of a State as well as by the decisions of its courts. (*Collins* v. *Metropolitan Life Ins. Co.* 232 Ill. 37; *Wall* v. *Pfanschmidt,* 265 id. 180.) The public policy of this State to secure to each of the stockholders of a corporation the right to vote for directors or managers we think had been plainly shown for many years before the constitution of 1870 was passed. In 1824 the legislature passed an act to authorize the incorporation of manufacturing companies, and it was stated (Laws of 1824, p. 14,) in the general Incorporation law that in the election of trustees by the stockholders of manufacturing companies "each share shall entitle its possessor to one vote." In 1849 the legislature provided in the general law for the incorporation of companies organized to engage in

any kind of manufacturing, agricultural, mining or mechanical business, that "each stockholder shall be entitled to as many votes as he owns shares of the stock in said company, and the persons receiving the greatest number of votes shall be trustees." (Laws of 1849, p. 87.) See to the same effect, Laws of 1857, pp. 110, 112.

Counsel for petitioner also strongly argue that if we consider the debates that were held in the convention which framed the constitution of 1870 it will clearly appear that the primary, if not the sole, object of the convention in adopting section 3 of article 11 was to give power to minority stockholders to vote in a cumulative manner for directors or managers of the company. We do not so construe said debates on this question. Furthermore, we think it is the law that in construing constitutions, where the language used is clear and unambiguous, the debates can have little or no bearing or effect in their construction. *Hills* v. *City of Chicago*, 60 Ill. 86. See, also, *People* v. *Stevenson, supra;* Potter's Dwarris on Statutes, 637, 638.

The public policy of the State as shown by legislative enactments and in the decisions of this court, and particularly by the provisions of section 3 of article 11 of the constitution, must be held to be that the petitioner's by-laws and the proposed amendment of its articles of incorporation, which provided that the owners of preferred stock in said corporation should be deprived of the right to vote for directors or managers of the company, are contrary to the provisions of the constitution, and therefore the Secretary of State rightly refused to permit the petitioner to file the amendment to the articles of incorporation on the payment of the statutory fee.

The writ in this case will therefore be denied.

*Writ denied.*