THE RUDOLPH WURLITZER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE WURLITZER GRAND PIANO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57800, 66769. Promulgated November 24, 1933.

*Laurence Graves, Esq.*, for the petitioners.
*W. Frank Gibbs, Esq.*, for the respondent.

## OPINION.

SMITH: The basic question presented by this proceeding is whether the preferred stock of the Wurlitzer Grand Piano Co. is " nonvoting stock " within the meaning of section 141 (d) of the Revenue Act of 1928, which reads in part as follows:

(d) *Definition of " affiliated group "*.—As used in this section an " affiliated group " means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations.

As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

At the hearing of this proceeding, counsel for the petitioners stated:

If the Commissioner is right in his determination that this preferred stock is voting stock, his determination of the tax liability is correct. If, on the other hand, this preferred stock is not in fact voting stock his determination is erroneous and the Wurlitzer Grand Piano Company should be included and consolidated for each of those years.

Section 6 of the General Corporation Act of the State of Illinois, approved June 28, 1919 (Callaghan's Illinois Statutes Annotated, ch. 32, vol. 2, p. 1868), provides in part:

¶ 6. *Powers, rights and privileges generally.* § 6. Each corporation organized under this Act shall, subject to the conditions and limitations prescribed by this Act, have the following powers, rights and privileges:

\* \* \* \* \* \* \*

(4) To have a capital stock of such an amount, and divided into shares with a par value, or without a par value, and to divide such capital stock into such classes, with such preferences, rights, values and interests as may be provided in the articles of incorporation, or any amendment thereof;

\* \* \* \* \* \* \*

(10) To make by-laws not inconsistent with the laws of this State for the administration of the business and interests of such corporation.

Section 15 of the same act (Callaghan's, etc. p., 1890), provides:

¶ 15. *Election of directors named in certificate—Meeting to elect officers and adopt by-laws.* § 15. The directors named in the certificate of incorporation shall be elected by the subscribers to the capital stock named in such certificate after due and timely notice; and such directors shall, within sixty days next after incorporation, meet, elect officers, adopt by-laws, and transact such other business as may properly come before them.

Section 18 (p. 1891) provides in part:

¶ 18. *Election—Term—Division into classes.* § 18. The directors named in the certificate of incorporation shall hold office until the first annual meeting of the stockholders. At such annual meeting and at each annual meeting thereafter, the stockholders shall, except as hereinafter provided, elect directors for a term of one year.

Section 21 (p. 1893) provides in part:

¶ 21. *Powers and duties.* § 21. The directors shall:
(1) Exercise the corporate powers of the corporation.

Section 39 (p. 1913) provides:

¶ 39. *Annual meeting—Time for holding—Notice to stockholders—Quorum.* § 39. An annual meeting of the stockholders shall be held within ninety days after the end of each fiscal year of the corporation. A written or printed

notice, stating the place, day and hour of the meeting shall be mailed by the secretary of the corporation at least ten days before such meeting to each stockholder to his, her or its last known post office address, as appears upon the books of the corporation. A majority of the capital stock outstanding represented in person or by proxy shall constitute a quorum at all stockholders' meetings.

Section 42 (p. 1914) provides:

¶ 42. *Election of directors—Holding at annual meeting.* § 42. Directors shall be elected at the regular annual meeting of the stockholders.

Section 50 (p. 1915) provides:

¶ 50. *Number of votes to which subscriber or stockholder entitled—Cumulating votes.* § 50. In all elections for directors every subscriber or stockholder shall have the right to vote in person or by proxy for the number of shares of stock owned by the holder for as many persons as there are directors to be elected, or to cumulate such shares and give one candidate as many votes as the number of directors multiplied by the number of shares of stock shall equal, or to distribute them on the same principle among as many candidates as the holder shall think fit.

Section 3 of article 11 of the Constitution of the State of Illinois, in effect at the date of the organization of the Wurlitzer Grand Piano Co. and for many years prior thereto, reads as follows:

The General Assembly shall provide, by law, that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner.

In *People ex rel. Watseka Telephone Co.* v. *Emmerson*, 302 Ill. 300; 134 N.E. 707, a petition for mandamus was filed, praying that the secretary of state be commanded to issue a certificate to the Watseka Telephone Co. permitting it to increase its capital stock and issue preferred stock containing certain conditions. The conditions were in a resolution providing that preferred stockholders should not have the right to vote as to any election or to consent to or refuse to consent to any corporate action; that such right was waived by the owners and holders of such preferred stock as a condition and in consideration of its being issued by the company. The secretary of state refused to receive the proposed amendment to the articles of incorporation on the ground that the proposed amendment was not in conformity with the provisions of the Constitution of the State of Illinois. The case was considered by the Supreme Court of the State of Illinois, which held that in view of the con-

stitution (sec. 3, art. 11) and the General Incorporation Act, section 28a22, containing practically the same provision, enacted pursuant thereto, an Illinois corporation has no right to issue preferred stock depriving stockholders of the right to vote for directors. The court said:

The public policy of the state, as shown by legislative enactments and in the decisions of this court, and particularly by the provisions of section 3 of article 11 of the Constitution, must be held to be that the petitioner's by-laws and the proposed amendment of its articles of incorporation, which provided that the owners of preferred stock in said corporation should be deprived of the right to vote for directors or managers of the company, are contrary to the provisions of the Constitution, and therefore the Secretary of State rightly refused to permit the petitioner to file the amendment to the articles of incorporation on the payment of the statutory fee.

In *People ex rel. Weber* v. *Cohn*, 339 Ill. 121; 171 N.E. 159, the question before the court was whether the stockholders of the corporation were authorized to elect a director or whether that was required to be done by the then two directors. Paragraph 5 of section 21 of the Corporation Act (Smith's Stat. 1929, p. 726), provided that the directors of a corporation shall "fill all vacancies which may happen in the board of directors caused by death, resignation or otherwise, until the next annual meeting of the stockholders." The Supreme Court of Illinois held that this statute violated article 12, section 3, of the Constitution of the State of Illinois above adverted to and that it was void. In the course of its opinion the court stated:

The precise question presented has not previously been considered by this court. In *People* v. *Emmerson*, 302 Ill. 300, 134 N.E. 707, 21 A.L.R. 636, this court considered the provision of the Constitution referred to, and held that a corporation could not deprive any stockholder of the right to vote by the adoption of a resolution amending articles of incorporation so as to exclude preferred stockholders from the right to vote. The court said in *Hall* v. *Woods*, 325 Ill. 114, 156 N.E. 258, 269, that "every stockholder of a corporation has the right to vote his stock at every election of directors, and the Legislature has no power to enact a law which will prevent his doing so." The court said in *Luthy* v. *Ream*, 270 Ill. 170, 110 N.E. 373, 375, Ann. Cas. 1917B, 368: "Corporations shall be controlled by a majority of the stockholders, acting through directors elected by them. * * * The power to vote for directors can be exercised only by stockholders in person or by proxy, and they cannot be deprived or deprive themselves of this power."

From the foregoing it seems plain that the provision of the charter of the Rudolph Wurlitzer Co. which authorized it to issue preferred stock without voting rights, provided the dividends were not more than one year in arrears, was in violation of the Constitution of the State of Illinois and therefore void. Likewise it seems plain that the preferred stockholders had a right under the Constitution of the

State of Illinois to vote their shares if they had elected to do so. They undoubtedly could have enforced their rights by a *quo warranto* proceeding, which was the proceeding taken in *People ex rel. Weber* v. *Cohn, supra.* The question is whether the respondent may question a provision of the charter of the company for the purpose of collecting Federal income tax. In *Cortez Oil Co.,* 20 B.T.A. 462, the Board held that, where a corporation held and voted certain capital stock of another corporation in violation of section 49, article 9, of the Constitution of Oklahoma, such stock should nevertheless be taken into consideration as voting stock in determining the question of affiliation. The Board said:

Petitioner asserts that by the above provisions [section 41, article 9, Constitution of Oklahoma] Indiahoma was prohibited from voting the stock held by it, with the result that all the voting stock was held by Meyer and the King family. * * *

* * * * * * *

The Constitution of Oklahoma does not declare such ownership and voting void. It imposes neither forfeiture nor penalty. No legislation has been enacted to carry it into effect. It lays down a rule of public policy and not of property. Only the State could question the validity of the transaction. [Citing cases.]

Tax matters are controlled by what actually took place and not by what might have occurred. Petitioner or its officers might have taken steps through the proper public officials to require Indiahoma to sell its stock or to stop it from voting, but neither was done. Unquestionably a majority of petitioner's stock was owned by Indiahoma and it was in fact voted and upon its vote is based the entire superstructure of corporate affairs. The legal and practical situations are such that we must hold that in determining the question of affiliation the stock owned by Indiahoma must be treated as any other stock.

The record does not disclose in the instant proceeding whether the preferred stockholders of the Rudolph Wurlitzer Co. in fact voted their stock in either of the tax years before us. Presumably they did not. We think it is clear, however, that they had the right to vote their stock under the Constitution of the State of Illinois had they chosen to do so. We are therefore of the opinion that the preferred stock was not nonvoting within the purview of section 141 of the Revenue Act of 1928. The action of the respondent in refusing so to consider it is sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

STERNHAGEN dissents.