### ROBERTS et al. v. WHITSON.

### No. 13627.

Court of Civil Appeals of Texas. Dallas.

June 15, 1945.

Rehearing Denied July 13, 1945.

D. A. Frank, M. S. Church, and Wm. H. Francis, all of Dallas, for appellants.

Hassell & Hassell, Hughes & Monroe, and P. P. Ballowe, all of Dallas, for appellee.

LOONEY, Justice.

The undisputed facts involved in the controversy, revealed by the pleadings, are these: The J. W. Crowdus Realty Company, a Texas corporation with an authorized capital stock of $300,000, at the time this controversy arose owned two valuable office buildings in the City of Dallas. On May 15, 1929, two of its stockholders, L. R. Whitson, appellee herein, and T. P.

Roberts, one of the appellants, agreed in writing as follows: "That both of said parties are stockholders of the J. W. Crowdus Realty Company, and, believing it to be to our interest at all times and in all meetings of stockholders to vote our stock collectively, do hereby bind ourselves, heirs and representatives, for a period of 25 years from and after date hereof, to vote collectively all shares of the capital stock of the J. W. Crowdus Realty Company now owned or hereafter acquired by us or either of us." On December 7, 1943, more than 14 years subsequent to date of the original agreement, L. R. Whitson, T. P. Roberts and his divorced wife, Allene C. Roberts, owners of a majority of the stock of the Crowdus corporation, agreed in writing in substance as follows: After setting out the original agreement between Whitson and T. P. Roberts, ratified, amended and amplified same, agreeing that in all matters to be voted upon by the stockholders of the corporation, including election of directors, the three contracting parties would endeavor to reach an accord in advance of a stockholders' meeting as to voting their stock in a block upon any issue or question presented to the stockholders for decision; but in case of a disagreement, to submit the issue to arbitration, each party to appoint an arbiter to be selected from the business of banking, insurance, or manufacturing, or from executives of public utilities,—the three thus selected to select two more, and a majority of the five to decide the issue involved, after which the three stockholders were to vote their stock accordingly; the agreement to remain in effect for the unexpired portion of the original 25 years provided for (in effect, something over 10 years), and was to be binding not only upon all stock then owned by the parties, but upon all subsequently acquired within the period named. Either party was authorized by will or other instrument, to designate some person (not necessarily a stockholder) to represent his or her stock after death and during the remainder of the period covered by the voting agreement; and, in the absence of such provision, it was agreed that the person who should succeed to the ownership of 50 percent or more of the stock owned by the party at his or her death, would be authorized to designate some person as successor in the voting agreement; and that, in the event either party should dispose of his or her stock, the person acquiring a majority

thereof should succeed to all the rights and obligations of the former owner under the voting agreement; and further that all stock subject to the agreement should remain subject to the terms thereof, regardless of transfer.

On November 10, 1944, Whitson addressed a communication to both T. P. Roberts and Mrs. Allene Roberts, giving notice that at the annual stockholders' meeting of the corporation to be held January 9, 1945, he, Whitson, would propose for election as Directors for the ensuing year, five persons, naming them; stating that he would be glad to have the views of Mr. and Mrs. Roberts in regard to the matter, but that in the absence of some word on the subject within fifteen days, would assume that the proposal met with their approval.

On November 22, T. P. Roberts simply acknowledged receipt of the Whitson communication and stated that he would take the matter under advisement. Under date of December 8, Whitson addressed a note to both Mr. and Mrs. Roberts, stating that in the absence of any other word on the subject he would demand an arbitration as provided for in the voting agreement, naming an arbiter for that purpose, and requesting the other parties to appoint their arbiters; stating that failure to do so would necessitate consideration of the matter involved by the arbiter actually appointed. On December 18, T. P. Roberts acknowledged receipt of Whitson's communication of the 8th in the following language: "You are hereby advised that, relying upon the advise of my attorneys that the agreement is unlawful and not binding upon me, I hereby notify you that such an agreement is of no further force and effect." Whitson notified Mrs. Roberts of the repudiation of the voting agreement by Mr. Roberts, but she also failed to appoint an arbiter as requested.

The result was that on January 9, 1945, Whitson instituted the present suit against T. P. Roberts and Mrs. Allene Roberts, both stockholders and directors in the corporation, also L. H. Morrison, secretary of the corporation, a director but not a stockholder, who was charged with the duty of accounting for the voting of all stock at stockholders' meeting, and of verifying and approving proxies of absent stockholders, etc. Whitson's petition is lengthy, but alleged the facts, in substance, as just stated; prayed for injunctive relief

both temporary and permanent; asked that T. P. Roberts and Mrs. Allene Roberts be compelled to comply with the terms and provisions of the voting agreement and prohibited from voting the stock at any stockholders' meeting except in compliance with the terms and provisions of the agreement; and that Morrison, secretary of the corporation, be enjoined from counting or recognizing the shares of stock owned by Mr. and Mrs. Roberts at any stockholders' meeting for any purpose except those in harmony with the terms and provisions of the voting agreement.

The court granted a temporary restraining order as prayed, and directed that notice issue requiring the parties to appear on January 15th and show cause, if any, why a temporary injunction should not be granted as prayed. T. P. Roberts answered at length, contending in short that Whitson should be denied the injunctive relief sought because the voting agreement plead was and is void, in that its provisions are in derogation of and contrary to the law and public policy of the State in regard to control, management and operation of corporations, and besides, being revocable in nature, had been revoked; therefore was of no further force and effect. Morrison answered, adopting the allegations and contentions as set forth in the answer of T. P. Roberts, insofar as applicable. Mrs. Allene Roberts admitted that Whitson's allegations were substantially correct, that she and T. P. Roberts were each obligated and bound to comply with the terms of the voting agreement, setting forth at length reasons for such contention, concluding with a prayer that the relief sought by Whitson be granted and that she be granted all relief in law and equity to which she may justly be entitled, etc. The J. W. Crowdus Realty Company, by leave of court, filed a lengthy plea of intervention, contending in effect that the voting agreement was contrary to public policy, in derogation of the laws controlling corporations, a threat and menace to orderly and profitable administration of the affairs of the corporation and against the interest of the minority stockholders; wherefore, prayed that the injunctive relief sought be denied and that the voting agreement be declared null and void. Certain minority stockholders, representing 1223 shares, also intervened and filed a lengthy plea, adopted the allegations of T. P. Roberts and Crowdus Realty Company, insofar as applicable to the rights of these interveners, prayed that injunctive relief be denied and that the voting agreement be declared illegal, against public policy, and void.

At the hearing for temporary injunction, the parties agreed that the pleadings set forth the facts, and, after duly considering same, the court overruled all exceptions, the motion to dismiss, and granted a temporary injunction as prayed; whereupon, T. P. Roberts and L. H. Morrison stated in open court that the case had been fully developed; that they could not present on final hearing any better defense than that offered, and, all parties to the controversy, —plaintiff, defendants and interveners, having agreed that the court's rulings were determinative of the controversy, the court entered judgment as follows: "It is therefore ordered and decreed that the aforesaid writs of injunction shall be, and the same are hereby made permanent, upon the filing by plaintiff of a bond payable and conditioned as at law required in the sum of Ten Thousand dollars ($10,000.00). Pursuant to such stipulation, all other relief prayed for by plaintiff, by the defendants and by the interveners is hereby denied."

T. P. Roberts, L. H. Morrison and the interveners in open court excepted to the judgment and gave notice of appeal. The appeal was duly perfected by T. P. Roberts and the interveners, but Mrs. Allene Roberts neither excepted to the judgment nor did she appeal.

The questions presented on this appeal were foreshadowed in the pleadings of the parties heretofore set forth, and are these: (a) Was the voting agreement revocable? (b) Was it in derogation of laws controlling corporations and against public policy? These questions will be combined in the discussion.

■ It is obvious, we think, that the parties to the voting agreement were absolute owners of their stock, that neither had any interest in charge or lien upon the stock of the other, and that the agreement, even if considered permissible, was not based upon any consideration deemed valuable in law.

■ It is generally held that agreements or combinations by stockholders to vote their stock so as to control corporate action, are permissible if, without fraud, they seek to accomplish only what they

might have accomplished without the agreement. See Vol. 5, Fletcher Cyc., p. 194, sec. 2064; Vol. 2, Hildebrand, Tex. Corp., p. 493, sec. 556; also Withers v. Edwards, 26 Tex.Civ.App. 189, 62 S.W. 795. While it is true that, absent fraud, proxies and voting agreements are generally sustained, yet, if not coupled with an interest or based upon consideration deemed valuable in law, are revocable; indeed, according to the weight of authority, an irrevocable proxy or power of attorney to vote stock, if not coupled with an interest, is contrary to public policy. See Vol. 5, Fletcher Cyc., sec. 2062, p. 187; Vol. 2, Hildebrand, Tex.Corp., sec. 556, p. 494.

■ Stockholders have a duty to perform, that is, to use their voting power for the best interests of the corporation, and cannot agree or combine in such a way as to place their voting power in others, thereby disqualifying themselves to perform this duty; but at all times must be free to cast their vote for what they deem the best interests of the corporation. Vol. 2, Hildebrand, Tex.Corp., sec. 556, p. 491; Vol. 5, Fletcher Cyc., sec. 2065, p. 209.

A case in point is Luthy v. Ream, 270 Ill. 170, 110 N.E. 373, Ann.Cas.1917B, 368, where stockholders owning a majority agreed that their stock should be voted as a unit upon all questions affecting the business and management of the corporation, and one of their number was to hold and vote the stock on behalf of the others. The agreement, by express provisions, was to be irrevocable for ten years. The Supreme Court of Illinois held that: "As stockholders cannot divest themselves of their duty to participate in controlling the corporation, and as there is no such thing as an irrevocable proxy to vote stock not coupled with an interest, a trust agreement, whereby the owner of less than 1 per cent. of the stock of a corporation had absolute power to vote a majority of the stock as he saw fit, which power was made irrevocable for 10 years, is invalid, and can be repudiated." (Syl. 4). And in a similar situation presented in Commonwealth ex rel. Clarke v. Roydhouse, 233 Pa. 234, 82 A. 74, the Supreme Court of Pennsylvania, among other things, held that: "Where a voting trust agreement does not give to the trustee any beneficial interest,

but merely confers the right to vote as directed by a committee of stockholders, and to distribute among the parties to the agreement the amount received as dividends, such agreement is revocable." (Syl. 1).

■ We think it obvious that the voting agreement under consideration comes under the ban of authorities cited, as several contingencies are provided where the ownership and power to vote stock are separated. This is true where the parties disagree as to how their stock should be voted on an issue or question presented to stockholders for decision; in such event, the agreement provides for appointment of a board of arbitration constituted of strangers who were to decide the issue or difference, and, according to their decision, the stock was to be voted. The agreement also provides that either party had the right, by will or otherwise, to designate someone with authority to represent the stock after death of the owner, and this without regard to its ownership; and, in absence of such a provision, the person succeeding to the ownership of at least 50 percent of the stock on death of the former owner, was authorized to appoint someone to vote the stock; and, in case either stockholder disposed of his or her stock, the person acquiring a majority should succeed to the rights and powers of the former owner under the voting agreement; thus clearly disfranchising those acquiring the minority of the stock.

We think the voting agreement was revocable, and, having been revoked by T. P. Roberts, was no longer in force and effect; and, furthermore, are of opinion that, under the authorities cited, the agreement was in derogation of the laws of this State controlling corporations, against public policy, and void. Therefore, the judgment of the lower court is set aside, and judgment here rendered for appellants, dissolving the injunction and holding for nought the voting agreement involved.

Reversed and rendered.

BOND, C. J., is of opinion that the voting agreement involved was revocable, and agrees to the disposition made of the case, but dissents from the view that the agreement was in derogation of law or against public policy.