## Rich v. Phila. Fire Dept. Relief Assn. et al.

*Leonard B. Rosenthal*, for plaintiff.

*I. Herman Stern*, for defendants.

KUN, P. J., May 26, 1955.—This litigation was commenced by a bill in equity filed in the Court of Common Pleas No. 7, through which plaintiff sought to be declared legally elected a trustee of defendant association. Plaintiff is a captain in the Fire Department. He sought election as a trustee to represent a minority group, to accomplish which the minority sought to cumulate their votes for him. The election officials denied the minority this privilege, which action was subsequently confirmed by a special meeting of the association's board after the election.

In the equity proceedings in the Court of Common Pleas No. 7, defendants, being the association, its election officials, and Ernest Greiner, whose right to the office of trustee is in question, interposed a number of preliminary objections, all of which were decided against defendants excepting the jurisdictional question, as to which defendants' objection was sustained and the case was certified to the law side of the court as an action in quo warranto. When the case came up for trial before us, the parties waived a jury.

Defendants have raised the same legal questions heretofore raised, and while they were disposed of by Judge Sloane, we will consider them because of his reservation that defendants could raise the questions again at the trial in the quo warranto proceedings.

There is no material question of fact in this case. The underlying legal question is whether the members of defendant association were entitled to cumulate their votes for plaintiff. The principal question is whether each of the members of the association who voted for plaintiff had the right to cumulate his votes and each cast five votes for plaintiff, one of the candidates, because there were five trustees to be chosen. Defendants raised some incidental questions which will be considered and disposed of.

1. On the first question as to the right of plaintiff to sue before, as argued, "exhausting." his remedies within the organization, aside from the fact that no such procedures are provided for by the bylaws of defendant association, the question in this case is not such an "internal dispute" which could be settled in the association, but rather a legal question under the Constitution of Pennsylvania as to the right to cumulate votes. In such a situation resort to the courts may be made directly: O'Neill et al. v. United Plumbers, etc., 348 Pa. 531. As has been mentioned, the board of directors of defendant association (the board of directors under the charter of the association being composed of the officers and five trustees), at a special meeting following the election at which the election officials refused to allow cumulative voting, confirmed that action, so that if the board could in any sense be considered an appellate body within the organization, an appeal thereto would be useless since it had already passed on the subject against plaintiff. Where an appeal within the organization, even where such a proceeding is provided for, would be an obvious futility, the principle of exhausting internal remedies prior to suit has no application: Heasley et al. v. Operative P. & C. F. I. Assn., 324 Pa. 257. Moreover, there is a serious question whether the principle referred to can be applied to a quo warranto proceeding

by which there is raised merely the legal question of the right to an office.

2. The second question is whether an alternate proxy, authorized to vote in the absence of the primary proxy, may nevertheless vote when the latter is present. Why this question was raised we cannot understand because the votes cast by the alternate proxy in the presence of the other were in fact accepted and counted. No one ever questioned the alternate proxy's *right* to cast the votes, though the primary proxy was present who also cast votes which were accepted and counted. That it was the duty of the election officials to accept the votes cast by the alternate proxy in these circumstances was decided in Commonwealth v. Roydhouse, 233 Pa. 234. To the same effect, Rossing et al. v. State Bank of Bode et al., 181 Iowa 1013, 165 N. W. 254; 2 Cook on Corporations (7th ed.), 1785; 18 C. J. S. 1253, sec. 550. However, the election officials counted the votes as single votes only, and refused to count them cumulatively, which is the main legal question in the case, discussed later.

3. The third question is whether the election officials had the right to reject 16 proxy votes because the proxies were not witnessed. The charter of defendant corporation was amended by article VI for voting on amendments and election of officers by proxy. There is no provision or form of proxy, or any requirement that a proxy be witnessed. No question was ever raised about the genuineness of the signatures on the proxies, and indeed the judge of the elections conceded that there was available a book in the form of a binder which contained the signatures of all of the members. If any question had arisen about the genuineness of the signatures, the binder could have been consulted to verify the signatures. Aside from that consideration, the applicable law is found in 7 R. C. L., p. 342, §321, as follows: "Inspectors of election cannot re-

ject a vote offered by proxy when proxies are authorized by statute, merely because the written proxy was not acknowledged or proved. . . . The genuineness of proxies offered to be voted upon is a question which the inspectors of election have no power to pass upon if the proxies are regular in form and apparently executed by stockholders. . . ." The same appears in 13 Am. Jur. 534, 535, §497.

It was pointed out in the early case of Commonwealth ex rel. Grier v. Coxe, 1 Legal Chronicle Reports 89 (Foster), that the duties of election officials are purely ministerial; their duty is to receive and count the votes and perform no judicial function, as to pass on the validity of votes. The court said, at p. 95: ". . . They say also, that they refused to receive the proxies, because they were not executed and attested in accordance with the by-laws of the company, *and that there was no proof offered* that the signatures were genuine. They don't say the signatures were not genuine, or that they believed that they were not genuine, or that they were even informed so, and therefore the rejection of votes for this latter reason is a mere pretext for a violation of their plain duty. It needs no comment."

It is clear, therefore, that the election officials had no right to reject the 16 votes merely because the proxies were not witnessed.

4. The fourth and main question is whether a nonprofit corporation, chartered in 1873, but whose charter was amended in 1893, is subject to the provisions of article XVI, sec. 4, of the State Constitution, which provides for cumulative voting in all elections for directors or managers of the corporation.

This question was answered in the affirmative in Commonwealth ex rel. v. Flannery, 203 Pa. 28, in which it was held that a corporation of the first class which came into existence in 1870 but amended its

charter in 1892, acquired thereby a benefit under the State Constitution passed in the interim, and was subject to its regulations providing for cumulative voting, the underlying purpose of which was to provide for a minority representation on a board of directors or managers of a corporation if sufficient votes could be obtained by cumulating them for a candidate. This is settled law, and the fact that members of a corporation did not before attempt to exercise the right or give notice of intention to vote cumulatively does not preclude the exercise of such right. Commonwealth ex rel. v. Acker et al., 308 Pa. 29; Commonwealth ex rel. Laughlin, Jr., et al., v. Green et al., 351 Pa. 170.

In the last case cited, Justice (now Chief Justice) Stern pointed out that the Business Corporation Law of May 5, 1933, P. L. 364, confirms the right of shareholders in such corporation to cumulate their votes. To the same effect is the Non-Profit Corporation Code, 15 PS §2851, art. VI, sec. 606.

It follows from the foregoing that if the votes cast for plaintiff were cumulated, he would have a majority of the votes cast at the election. The tally sheet signed by the election officials certified that plaintiff received 406 proxy votes, of which 16 were rejected because they were not witnessed. Plaintiff was entitled to have the entire 406 proxy votes counted cumulatively, as marked and voted. As five trustees were being elected, plaintiff was entitled to have counted for him 2,030 proxy votes plus 11 single votes, or a total of 2,041 votes. Since this was more than the votes cast for any other nominee, it follows that plaintiff, Captain Frank Rich, must be declared elected a trustee of defendant association, and that defendant, Ernest Greiner, who received the least number of votes, should be ousted from the office of trustee of defendant association and be replaced by plaintiff. A finding to this effect has been entered by the court.