**C. M. GROGAN et al., Appellants,**

v.

**J. G. GROGAN et al., Appellees.**

No. 6119.

Court of Civil Appeals of Texas.

Beaumont.

May 22, 1958.

Rehearing Denied July 2, 1958.

Carney & Mays, Atlanta, for appellant.

McClain & Harrell, Conroe, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Montgomery County, declaring void certain voting trust agreements of certain stockholders of the Grogan-Cochran Lumber Company.

The suit was instituted under the uniform declaratory judgment act by the appellees, J. G. Grogan, Sr., et al., against C. M. Grogan, et al., appellants, and they alleged that a voting trust agreement in writing executed in 1953 by H. N. Grogan, deceased, husband of the appellee, Mrs. May Cobb Grogan, to J. G. Grogan, Sr., and all of the appellants, and a voting trust agreement executed in 1955 by the said H. N. Grogan, deceased, Mrs. Ollie A. Grisham, Mrs. T. M. Yancey and Mrs. Mildred Von Baden with the appellants, were both void and of no effect. They alleged that the voting trust agreements were void, because they were executed for an improper purpose, which was to retain said H. N. Grogan in a lucrative position as Vice-President and General Manager of the Grogan-Cochran Lumber Company, and to eventually establish P. J. Grogan as his successor as General Manager of the Grogan-Cochran Lumber Company. The suit also sought injunctive relief, which was denied.

The case was tried to the court without a jury and resulted in judgment in favor of the appellees, declaring both trust agreements void and of no force and effect. The trial court filed findings of fact and conclusions of law which will be discussed below.

The appellants have duly perfected their appeal to this court for a review of the judgment.

The appellants' first point is that the trial court erred in rendering judgment because J. G. Grogan, Jr. was not made a party to the suit and he was a necessary and indispensable party because he was one of the trustees named in the 1955 voting trust agreement. This point is overruled. While J. G. Grogan, Jr. was named in the first paragraph of the 1955 voting trust agreement as one of the three trustees of such agreement, the evidence on the trial was conclusive that he never did sign the instrument, looked at it but never did read it and so far as the evidence shows never did accept any of the duties of such trustee. Since he did not sign the instrument either as a trustee or as a stockholder, he was not a party to the instrument and we are unable to see that he had any rights or duties under the instrument which could be affected by the judgment in this case. We do not believe he was a necessary party to the suit.

The appellants' second point is that the trial court erred in overruling their exception to the appellees' entire cause of action, such exception reads as follows: "Defendants specially except plaintiffs' petition as a whole and say that same does not constitute a valid cause of action, and that said petition should be in all things abated; of which special exception defendants pray judgment of the court." This exception by its wording does not, as required by Rule 91, Texas Rules of Civil Procedure, point out specifically the insufficiency of the petition of the appellees. It appears to be more of a general demurrer than a special exception and a general demurrer was abolished by Rule 90, T.R.C.P. This point presents no error and it is overruled.

Appellants' third and fourth points present the basic question of law at issue in this controversy. By their third point they say that the trial court erred in adjudging and declaring that the trust instruments or agreements of 1953 and 1955 were void and of no force and effect, and by their fourth point they say that the court erred in finding and declaring that the purpose of the voting trust agreements was to insure the election of a Board of Directors of the Grogan-Cochran Lumber Company who

were friendly to, and who would retain H. N. Grogan in a lucrative position as General Manager of said company and also to eventually establish P. J. Grogan as his successor to H. N. Grogan as general manager of said company. The appellees on the other hand, in their counter-point to the appellants' points three and four, say that, "It having been shown by a preponderance of the evidence that each of the voting trust agreements had for their purpose to insure the election of a board of directors who were friendly to, and who would retain H. N. Grogan in a lucrative position as Vice-President and General Manager of the Grogan-Cochran Lumber Company, and to eventually establish P. J. Grogan as his successor, the trial court correctly found and declared said agreements void, as being against public policy."

The trial court, after the preliminary findings, made the following findings of fact:

"(6) That at the time of the death of the said H. N. Grogan, in December, 1955, he was Vice-President and General Manager of the Grogan-Cochran Lumber Company, which position he had held for many years, drawing a salary of $1,200.00 per month.

"(7) That beginning with the month of December, 1949, it was obvious, both from documentary evidence as well as oral evidence, that W. R. Grogan, one of the principal stockholders and a brother to H. N. Grogan, was opposed to H. N. Grogan serving longer as general manager of the Grogan-Cochran Lumber Company and was of the opinion that he should be replaced.

"(8) That in May, 1950, at a special meeting of the Board of Directors, it was decided that H. N. Grogan should continue as general manager until the mill had been rebuilt, with George L. Grogan, Jr., as his assistant, and that each would continue in such capacity until the Directors decided whether George L. Grogan, Jr., should take over as manager of the mill.

"(9) That both the documentary evidence and oral testimony evidences that H. N. Grogan was aware of the opposition to him as manager of the mill, recognizing the fact that his brother, W. R. Grogan, was desirous of replacing him.

"(10) That in 1951, H. N. Grogan had Hon. S. S. McClendon, an attorney with the firm of Vinson, Elkins, Weems & Searls, prepare a voting trust agreement for the stockholders of Grogan-Cochran Lumber Company, and having himself named as one of the Trustees therein, but not including his brother, W. R. Grogan. That from the evidence, it is apparent that the said H. N. Grogan was unsuccessful in getting any of the stockholders of Grogan-Cochran Lumber Company to join him in said voting trust agreement.

"(11) That neither of the aforesaid instruments revealed the purpose thereof, and, therefore, in order to ascertain the true purpose, it was necessary to resort to parol evidence.

"(12) That in addition to being opposed to H. N. Grogan as acting general manager of Grogan-Cochran Lumber Company, the said W. R. Grogan was also opposed to entering into a voting trust agreement.

"(13) That at the solicitation of H. N. Grogan, one or more members of his family called upon W. R. Grogan for the purpose of trying to effect a reconciliation between H. N. Grogan and W. R. Grogan. That said H. N. Grogan had prepared the second voting trust agreement bearing date of January 13th, 1953, and had the following named as Trustees: P. J. Grogan, W. R. Grogan, J. G. Grogan, L. A. Buckalew, and H. N. Grogan. That the said 1953 instrument was signed by all of the above named Trustees as stockholders and Trustees of Grogan-Cochran Lumber Company and by enough of the owners of the Grogan-Cochran Lumber Company stock so as to subject better than fifty per cent of the Company's capital stock to said voting trust agreement.

"(14) That in said instrument, Lester Grogan was named as a successor to P. J. Grogan; C. M. Grogan as a successor to W. R. Grogan; J. G. Grogan, Jr., as a successor to J. G. Grogan; Fred Cochran as a successor to L. A. Buckalew; and R. E. Duffey as a successor to H. N. Grogan; and that at the time of the trial of this case, the Trustees under the 1953 agreement are C. M. Grogan, R. E. Duffey, P. J. Grogan, J. G. Grogan and L. A. Buckalew.

"(15) That out of a total of 2,000 shares of stock in Grogan-Cochran Lumber Company, said Trustees owned the following number of shares, to-wit: R. E. Duffey 8 shares; C. M. Grogan, 18 shares; L. A. Buckalew, 36 shares; P. J. Grogan, 144 shares; and J. G. Grogan, Sr., 25 shares; a total of 231 shares or 11.6 per cent of the total capital stock.

"(16) That it was possible that three of said Trustees, that is, L. A. Buckalew, R. E. Duffey, and C. M. Grogan, owning three per cent of the total capital stock, could elect the board of directors of Grogan-Cochran Lumber Company.

"(17) That a majority of the Trustees originally named, together with the substitutes, were friendly to H. N. Grogan, who acceded to his wishes.

"(18) That from the testimony, it is evident that the said H. N. Grogan, up to the time of his death, felt insecure in his position as manager of the Grogan-Cochran Lumber Company.

"(19) That in the year 1955, whether true or not, the said H. N. Grogan nevertheless was laboring under the belief that there were some of the stockholders who might unite against him and oust him as manager of the mill.

"(20) That the said H. N. Grogan possessed much pride in operating the mill and that it was his desire to continue as manager of the mill for the purpose of drawing his salary, as well as to maintain his pride.

"(21) That the said H. N. Grogan had prepared the 1955 voting trust agreement, in which he, J. G. Grogan, Jr., and P. J. Grogan, were named as Trustees. That out of the three Trustees named, only two signed, they being P. J. Grogan and H. N. Grogan; that said voting trust agreement was found on the desk of H. N. Grogan at the time he was stricken and before he died on or about December 23rd, 1955.

"(22) That the Plaintiffs, except Mrs. May Cobb Grogan, and the Defendants, all being stockholders in Grogan-Cochran Lumber Company, entered into either one or both of the 1953 and 1955 voting trust agreements.

"(23) That the said Mrs. May Cobb Grogan never joined in either of said voting trust agreements and has at all times subsequent to the death of her husband, maintained the right to vote her community half of said stock individually and her deceased husband's half as said stock as Independent Executrix and Trustee under his Last Will and Testament.

"(24) That none of the stockholders owning stock in Grogan-Cochran Lumber Company, who entered into the 1955 agreement, assigned the stock certificates to the Trustees, unless the voting trust agreement accomplished such purpose.

"(25) That none of the approximately 400 shares of stock standing in the name of H. N. Grogan was placed or kept in a safety deposit box in a bank depository subsequent to the 1955 agreement, and that said stock certificates were delivered by S. S. McClendon without the consent of the Trustees to May Cobb Grogan, at her request, a short time after the death of H. N. Grogan, and which certificates she has since held.

"(26) That Mrs. May Cobb Grogan and J. G. Grogan each wrote letters of revocation during the early part of 1956 to the Trustees named in each of said instruments, referable to the stock which J. G. Grogan and H. N. Grogan had subjected to said voting trust agreements.

"(27) That none of the Trustees, under either of said agreements, held or asserted any interest, claim or right of ownership to any of the stock subjected to said voting trust agreements, save and except the right to vote same under the terms and provisions of said voting trust agreements.

The Court Finds and Declares that H. N. Grogan personally instigated, sponsored and brought about the preparation and signing of the aforesaid voting trust agreements.

The Court Finds and Declares that the purpose of each of the voting trust agreements entered into by and between the plaintiffs and defendants during the years 1953 and 1955 was: (a) To insure the election of a board of directors of the Grogan-Cochran Lumber Company who were friendly to and who would retain H. N. Grogan in a lucrative position as general manager of the Grogan-Cochran Lumber Company; and (2) to eventually establish P. J. Grogan as the successor to H. N. Grogan as general manager of the Grogan-Cochran Lumber Company.

The Court further Finds and Declares that the defendant Trustees will not attempt to vote the stock under either of the aforesaid agreements and that no necessity exists for an injunction."

The Court filed the following Conclusions of Law:

"(1) The Court is of the opinion and so finds that the law and the facts are in favor of the Plaintiffs and against the Defendants, and the Plaintiffs are entitled to all declaratory relief sought; that the purpose for which the voting trust agreements, bearing date of January 13, 1953, and December, 1955, were entered into, is against public policy of this state, and, therefore, said voting trust agreements are void and of no force and effect; that, therefore, the Trustees under neither of said voting trust agreements have the right to vote the stock owned by the shareholders of the Grogan-Cochran Lumber Company; that the Plain-

tiffs, together with the Defendants, have the right as stockholders to vote their shares at all future shareholder meetings so far as either of the said agreements may have impaired such right."

All of the above findings of fact are supported by the evidence.

The briefs of the parties are detailed and thorough upon the principal point of law presented. The decisions of our Texas Courts in regard to the validity of voting trusts are not in harmony and until the enactment of the new Texas Business Corporation Act in 1955, there was uncertainty whether such voting trust agreements by shareholders of corporations were valid or void as against public policy. In Withers v. Edwards, 1901, 26 Tex.Civ.App. 189, 62 S.W. 795; Funkhouser v. Capps, Tex.Civ. App. 1915, 174 S.W. 897; Hamblen v. Horwitz-Texan Theatres Co., Tex.Civ.App. 1942, 162 S.W.2d 455; Roberts v. Whitson, Tex.Civ.App.1945, 188 S.W.2d 875, 878, the courts struck down and held void voting agreements of stockholders. In these cases, different grounds were assigned for such invalidity. Only in the last case decided, Roberts v. Whitson, did the court hold that "proxies and voting agreements * * if not coupled with an interest or based upon consideration deemed valuable in law, * * * is contrary to public policy." In the Withers case and also in the Hamblen case, the courts, by way of dictum, declared that voting trusts may be validly entered into between stockholders of a corporation, provided the agreement does not have for its purpose some illegal end. In 1955, however, the Legislature enacted the Business Corporation Act, which included Article 2.30, V.A.T.S., providing as follows:

"Art. 2.30. Voting Trust

"A. Any number of shareholders of a corporation may create a voting trust for the purpose of conferring upon a trustee or trustees the right to vote or otherwise represent their shares, for a period of not

to exceed ten (10) years, by entering into a written voting trust agreement specifying the terms and conditions of the voting trust, by depositing a counterpart of the agreement with the corporation at its registered office, and by transferring their shares to such trustee or trustees for the purposes of the agreement. The counterpart of the voting trust agreement so deposited with the corporation shall be subject to the same right of examination by a shareholder of the corporation, in person or by agent or attorney, as are the books and records of the corporation, and shall be subject to examination by any holder of a beneficial interest in the voting trust, either in person or by agent or attorney, at any reasonable time for any proper purpose."

■ The enactment of this statute appears to us to put at rest any question as to the validity of a voting trust agreement, executed in compliance with such statute. Since a corporation is a creature of the statute and finds its sole source of powers and duties in the statute which creates it, the statutory provision in the above Article 2.30 is undoubtedly the expression of the public policy of the State of Texas in that regard and makes such voting trust agreements valid when executed in compliance with said statute and for a proper purpose.

The agreements before us in this case, however, are not attacked on the ground that they are void because all voting trust agreements are against public policy and void. By their second amended original petition upon which the case was tried the appellees focused their attack upon the voting trust agreements in this case upon their allegations that such agreements were made for the purpose of continuing H. N. Grogan in the lucrative position as manager of the corporation, and establishing P. J. Grogan, his nephew and son of W. R. Grogan, as his successor in that position. The fact that H. N. Grogan himself was a party to both agreements, and was named as a trustee in both of them, is the feature which makes these voting trust agreements invalid. In both Withers v. Edwards and Funkhouser v. Capps, cited above, the court cited Cook on Corporations for the following holding, "But a contract in regard to elections in private corporations is not legal if it provides that a lucrative corporate position shall be given to one or more of the parties to the contract." [26 Tex.Civ.App. 189, 62 S.W. 796.] Since the agreements themselves did not indicate the purpose for which they were executed, it was proper for the trial court to hear evidence to show the real purpose for the execution of such agreements. The evidence is satisfactory to show not only that Mr. H. N. Grogan was a party to the agreements but also that he was the one who had them drawn and secured the signatures of most of the remaining stockholders who signed them. Because of that fact, and the fact that a purpose of such agreements was to continue him in a lucrative corporate position, we agree with the conclusion of law filed by the trial court and hold that said voting trust agreements are void and of no force and effect. The appellants' third and fourth points are overruled.

We have read with interest the numerous authorities cited by both parties including the Article of Honorable Sylvan Lang in 30 Texas Law Review, pages 849, 857, the annotation in 105 A.L.R. at page 123, et seq., Judge Ira Polk Hildebrand's discussion of the Roberts v. Whitson case in Law of Texas Corporations, Vol. 2, 1950, Pocket Section, page 71, and 24 Michigan Law Review 344. We could write what we think would be an interesting discussion of the law of voting trusts in the United States and in Texas, its development and changes over the past fifty years, but we refrain. Such a discussion is unnecessary in view of our holding above that the voting trust agreements in this case are shown to be for an improper purpose and are void for that reason.

Under the facts found by the trial court, we believe the judgment was correct and it is accordingly affirmed.