Gerald M. ZOLLAR, Appellant,

v.

William C. SMITH and George R. Gibbons, Appellees.

No. 11–85–264–CV.

Court of Appeals of Texas, Eastland.

May 1, 1986.

Brian E. Cutbirth, Whitten, Haag, Hacker, Hagin & Cutbirth, Abilene, for appellant.

Hubert L. Gill, Davis, Deshazo & Gill, Lawrence P. Schaubhut, Schaubhut &

Smith, Austin, Don L. Wilson, Price & Wilson, Abilene, for appellees.

## OPINION

McCLOUD, Chief Justice.

This suit involves the issue of the revocability of a stock proxy granted by William C. Smith and George R. Gibbons to Gerald M. Zollar.[1] Zollar filed a motion for summary judgment against Smith and GRG Operating, Inc. claiming that the proxy was irrevocable for a period of ten years. Smith and GRG Operating, Inc. also filed a motion for summary judgment claiming that the proxy was revocable and that it had been revoked. The trial court granted summary judgment for Smith and GRG Operating, Inc. and denied Zollar's summary judgment motion. The trial court entered a declaratory judgment that the proxy was revocable and that it was revoked by Smith and Gibbons.[2] Zollar filed a motion for severance which was granted by the trial court.[3] Zollar appeals. We reverse and remand.

Zollar argues that the trial court erred in granting Smith's motion for summary judgment and in denying his motion for summary judgment because the proxy is irrevocable as a matter of law. TEX. BUS.CORP.ACT ANN. art. 2.29 C (Vernon 1980) governs irrevocable proxies. This article states:

> A shareholder may vote either in person or by proxy executed in writing by the shareholder or by his duly authorized attorney in fact. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless expressly provided therein to be

1. Smith, Gibbons and Zollar are shareholders in GRG Operating, Inc. The proxy permits Zollar to vote the stock of Smith and Gibbons. At the time the proxy was entered into, Zollar was president and a director of the corporation.

2. Gibbons was neither a movant nor non-movant to the summary judgment proceedings, therefore, the trial court erroneously entered a final judgment by declaring that Gibbons had revoked the proxy. No party objects to the "form" of the trial court's summary judgment order. The erroneous rendition of a final judgment is not fundamental error. *Teer v. Duddlesten*, 664 S.W.2d 702 (Tex.1984); *Schlipf v. Exxon Corporation*, 644 S.W.2d 453 (Tex.1982).

3. Other parties (including GRG Operating, Inc. and Robert W. Burks) and issues (including fraud, estoppel, and misconduct) were severed from this appeal.

irrevocable and unless otherwise made irrevocable by law.

Thus, an irrevocable proxy must: (1) expressly provide that it is irrevocable, and (2) it must otherwise be made irrevocable by law.

The first requirement of an irrevocable proxy is that it must expressly state that it is irrevocable. The proxy given by Smith and Gibbons to Zollar provides:

> 1. *Appointment and term.* Gibbons and Smith hereby revoke all previous proxies and, for a period of ten (10) years from the date hereof, appoint Zollar as their true and lawful attorney and proxy....
>
> \* \* \* \* \* \*
>
> 8. *Construction.* This Proxy is solely intended to be an irrevocable proxy and is not intended to be, and shall not be construed to be, a voting trust, voting agreement or pooling agreement.

Smith and Gibbons argue that the word "proxy" is used eleven different times throughout the document, but only one time are the words "irrevocable proxy" used. Smith and Gibbons contend, therefore, that the proxy is not clearly irrevocable. We disagree. The proxy expressly provides that it is intended to be an "irrevocable proxy." We hold, as a matter of law, that the proxy satisfies the first requirement of Article 2.29 C because the proxy "expressly provide[s] therein to be irrevocable."

■ The second requirement of an irrevocable proxy is that it must "otherwise [be] made irrevocable by law." This requirement was clarified by the Bar Committee's comment following Article 2.29 which states in part:

> The 1961 addition of the words "and unless otherwise made irrevocable by law" to Art. 2.29 C makes it clear that, to be irrevocable, a proxy must not only so state but must also satisfy the requisites of irrevocability under the common law, such as by being coupled with an interest or by being given as security.

We have found no Texas case interpreting this requirement that a proxy must "otherwise [be] made irrevocable by law." However, the court in *Roberts v. Whitson*, 188 S.W.2d 875, 878 (Tex.Civ.App.—Dallas 1945, writ ref'd w.o.m.), a case involving a voting agreement, stated in dictum that:

> While it is true that, absent fraud, proxies and voting agreements are generally sustained, yet, if not coupled with an interest or based upon consideration deemed valuable in law, are revocable; indeed, according to the weight of authority, an irrevocable proxy or power of attorney to vote stock, if not coupled with an interest, is contrary to public policy. See Vol. 5, Fletcher Cyc., sec. 2062, p. 187; Vol. 2, Hildebrand, Tex. Corp., sec. 556, p. 494.

The Bar Committee's comment, the dictum in *Roberts*, case law from other jurisdictions, and commentators all suggest that in order for a proxy to be irrevocable, it must be coupled with an interest or given as security. We agree. See Annot., 159 A.L.R. 307 (1945); 18 C.J.S. *Corporations* sec. 550 (1939); 20 HAMILTON, BUSINESS ORGANIZATIONS sec. 672 (Texas Practice 1973); H.G. HENN & J.R. ALEXANDER, LAWS OF CORPORATIONS sec. 196 (1983); Comment, *Irrevocable Proxies*, 43 Texas L.Rev. 733 (1965).

■ To determine what constitutes "coupled with an interest" or "given as security" for proxy agreements, the courts have looked to agency law. "The proxy agreement is viewed as creating the relationship of principal and agent and is for the most part governed by principles of agency law." Comment, *Irrevocable Proxies*, 43 Texas L.Rev. 733, at 735 (1965); see Annot., 159 A.L.R. 307 (1945). In *Pan American Petroleum Corp. v. Cain*, 355 S.W.2d 506, 508 (Tex.1962), the court cited 1 MECHEM, LAW OF AGENCY 570 et seq., 588 (2nd ed. 1914), in discussing the interest of an agent in the execution of a power. The court stated:

> (2) "An interest, not amounting to a property or estate in the thing itself, but still an interest in the existence of the

power or authority to act with reference to it, not for the purpose of earning a commission by the exercise of the power, but because the agent has parted with value, or incurred liability, or assumed obligations, at the principal's request or with his consent, looking to the exercise of the power as the means of reimbursement, indemnity or protection." Although this has been referred to by the courts as a power coupled with an interest and is not revocable by act of the principal, it is ordinarily deemed to be revoked by his death. For purposes of his classification, Mechem designates the same as a power given as security.

Mechem states that the following three requirements must be met: (1) the agent or proxyholder must have parted with value, incurred liability, or assumed obligations; (2) these actions must be at the principal's request or with his consent; and (3) the agent or proxyholder must look to the exercise of his proxy power as a means of reimbursement, indemnity, or protection.

■ In the instant case, Zollar meets the first requirement suggested by Mechem because Zollar parted with value. Zollar's affidavit states in part:

On or about May 13, 1983, I personally contributed $1,000.00 to GRG Operating, Inc. so that such corporation might begin its existence....[4]

Before the well made the subject matter of this suit could be drilled, myself ... personally paid ... money ... to drill the well in question, such sums being paid to GRG OPERATING, INC. Such sums were paid in consideration for the purchase of various interests in the well in question....

One important factor in the enforcement of an irrevocable proxy is the proxyholder's commitment to the corporation. "[T]he interest required to enforce an irrevocable proxy ... should constitute a substantial commitment to the corporation." Comment, *Irrevocable Proxies*, 43 Texas L.Rev. 733, at 743 (1965). We hold as a matter of

law that Zollar's 10% ownership of the corporation through his investment of $1,000.00 and his investment in the well constitute a substantial parting of value on behalf of the proxyholder.

In order to satisfy Mechem's second suggested requirement, the proxyholder's parting of value must be at the principal's request or with his consent. This requirement is satisfied, as a matter of law, by Zollar's affidavit which contains the following uncontradicted statement:

The above $1,000.00, as well as the above investments in the well in question, were paid to GRG OPERATING, INC. at either the request of George R. Gibbons and William C. Smith, or with their consent.

Mechem's third requirement is that the proxyholder must look "to the exercise of the [proxy] power as the means of reimbursement, indemnity, or protection." In his affidavit, Zollar states that "[t]he Proxy dated May 14, 1983, was required by me and taken to secure the value tendered by me ... to GRG OPERATING, INC...."

■ A summary judgment may be based on the affidavit of an interested witness. However, the affidavit must be clear, positive, direct, otherwise credible, and free from contradictions and *could have been readily controverted.* TEX.R. CIV.P. 166–A(c); *Major Investments, Inc. v. De Castillo,* 673 S.W.2d 276 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.); *Bankers Commercial Life Insurance Company v. Scott,* 631 S.W.2d 228 (Tex. App.—Tyler 1982, writ ref'd n.r.e.); *A & S Electrical Contractors, Inc. v. Fischer,* 622 S.W.2d 601 (Tex.App.—Tyler 1981, no writ). Zollar's affidavit does not meet this test. Zollar claims that he "required" the proxy from Smith and Gibbons in order to secure his investment in the corporation. Zollar's affidavit is, in essence, a self-serving statement of an interested party of his intentions and beliefs. The intent of the proxyholder in entering into and exercising

---

**4.** The proxy, dated May 14, 1983, states that Zollar owned 1,000 shares of stock in the corpo-

ration which represents 10% of all issued and outstanding shares of stock in the corporation.

a proxy is not susceptible to being readily controverted. This issue is best left to the fact finder for determination. See *Major Investments, Inc. v. De Castillo*, supra; *Bankers Commercial Life Insurance Company v. Scott*, supra.

Zollar also argues that this proxy is coupled with an interest or given as security because he encouraged his relatives to invest in the well. However, to be coupled with an interest or given as security, Mechem states that the agent or proxyholder, not collateral parties, must have parted with value, incurred liability, or assumed obligations. The rationale for the requirement that the interest be in the proxyholder is the need to protect the corporation. "The necessary interest of the proxyholder must center around a security need comparable to a proprietary incentive to maximize the overall welfare of the corporation so that abuse of his power is rendered highly unlikely." Comment, *Irrevocable Proxies*, 43 Texas L.Rev. 733, at 747 (1965). We hold that the investments and liabilities incurred by Zollar's relatives do not rise to the level of being coupled with an interest or given as security.

The judgment of the trial court is reversed, and the cause is remanded for trial.